145 Pa. Commonwealth Ct. 539 (1992)
604 A.2d 315
SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, (SEPTA), Petitioner,
v.
WORKMEN'S COMPENSATION APPEAL BOARD (POINTER), Respondents.
Commonwealth Court of Pennsylvania.
Submitted on Briefs December 18, 1991.
Decided February 14, 1992.
*540 Vatche Kaloustian, for petitioner.
Larry Pitt, for respondent.
Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and KELLEY, JJ.
DOYLE, Judge.
This is an appeal by Southeastern Pennsylvania Transportation Authority (Employer or SEPTA) from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision granting, for a closed period of time, a reinstatement petition filed by Jerome Pointer (Claimant).
The following facts as found by the referee are pertinent. Claimant suffered a work-related lumbar strain on July 6, 1985 while employed by SEPTA as a bus operator. SEPTA paid compensation for approximately six weeks until Claimant signed a final receipt on or about July 17, 1985. Thereafter, on July 25, 1985 the parties executed a supplemental agreement acknowledging that as of July 18, 1985 Claimant's disability had recurred. On August 20, 1985 another final receipt was signed followed again by another supplemental agreement of September 26, 1985 which recognized Claimant's ability to return to a light-duty position as a property attendant beginning October 2, 1985. Claimant suffered yet another recurrence and executed yet another *541 supplemental agreement and finally returned to work at no loss of earnings on June 5, 1986. From the period of June 5, 1986 through January 17, 1987 he worked as a transit cashier, a job which entailed selling tokens to Employer's patrons.
On January 20, 1987 Claimant was fired "for violation of company policy regarding collection and safe-keeping of money entrusted to him while performing duties as a cashier."[1] Nearly one year later, on December 8, 1987, Claimant filed a reinstatement petition alleging a recurrence of his June 6, 1985 work-related injury as of January 17, 1987 (his last day of work). In its answer to Claimant's petition Employer claimed that Claimant's loss of earnings was not due to his work-related disability but rather to his discharge for willful misconduct. The referee astutely noted in his adjudication that "[t]he issue to be adjudicated is whether the claimant's loss of earnings beginning on January 18, 1987 was attributable to a recurrence of his work-related injury of June 6, 1985 or his proper dismissal from SEPTA."
At the hearing Claimant presented the medical evidence of Dr. Vincent Baldino. The referee credited the testimony of this witness and found that as of January 17, 1987 Claimant had suffered a "recurrence" of his work-related disability. Employer presented the medical evidence of Dr. John Williams who opined, inter alia, that as of November 15, 1988 Claimant had fully recovered from his work-related injury. The referee found this testimony credible and thus terminated benefits effective that date. Thus, Claimant received total disability benefits for the closed period from January 18, 1987, his last day of work, through November 14, 1988, the day preceding Dr. Williams' examination. Employer appealed and the Board affirmed. Employer now appeals to this Court.[2]
With regard to the willful misconduct issue the referee found that Claimant's termination was "proper and justified." He allowed the limited grant of benefits, however, *542 because of his finding that Claimant's work-related medical disability continued to exist until November 15, 1988.
On appeal here[3] Employer presents one issue for our consideration: Whether Claimant is entitled to a reinstatement of compensation when he was discharged for willful misconduct.
In order to determine whether the grant of benefits was proper in this case certain diverse legal principles must be considered. At the time Claimant was fired his workmen's compensation benefits were suspended because he had returned to work without a loss of earnings although his work-related physical disability continued. Normally, when an employee who is working under a suspension seeks to have his benefits reinstated, proof of his continuing disability and his resultant loss of earnings is his only burden. See, e.g., Pieper v. Ametek-Thermox Instruments Division, 526 Pa. 25, 584 A.2d 301 (1990); Venanzio v. Workmen's Compensation Appeal Board (Eastern Express), 88 Pa.Commonwealth Ct. 204, 489 A.2d 284 (1985). The factual matrix which is most often encountered in such situations is that the claimant's light-duty job ends, often due to economic downturn, but the claimant's medical disability, of course, continues. As we explained in Busche v. Workmen's Compensation Appeal Board (Townsend and Bottum, Inc.), 77 Pa.Commonwealth Ct. 469, 466 A.2d 278 (1983), in such a situation the employer must either find other suitable and available work or resume payment of benefits. It should be noted that in these cases neither the claimant nor the employer bears any culpability for the claimant's misfortune.
The referee in this case found that at the time of Claimant's discharge his work-related disability "recurred." As used in the referee's adjudication "recurred" clearly means continued. It is thus apparent that the referee applied the *543 Pieper standard in analyzing Claimant's case. We must then determine whether this was the proper legal standard to apply under the circumstances of this case.
Section 413 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 772, pertinently provides:
[W]here compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury ... payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury. (Emphasis added.)
This provision has been interpreted to mean that where a referee finds that a claimant working under a suspension of benefits has been terminated for willful misconduct, workmen's compensation benefits are not properly reinstated because the claimant's loss of earnings is not due to his work-related disability, but rather to his own willful misconduct. Workmen's Compensation Appeal Board v. John W. Galbreath & Co., 20 Pa.Commonwealth Ct. 283, 341 A.2d 541 (1975); see also Crain v. Small Tube Products, Inc., 200 Pa.Superior Ct. 426, 188 A.2d 766 (1963) (interpreting 1956 version of Section 413 which is identical to current version for purposes of this issue); Woodard v. Workmen's Compensation Appeal Board, 49 Pa.Commonwealth Ct. 558, 411 A.2d 890 (1980) (final receipt case). Thus, a claimant who, although working under a suspension, is discharged for willful misconduct and who seeks to reinstate his benefits must show a change in circumstances, i.e., that his medical condition has worsened and that he cannot do jobs he would have been able to do at the time of his discharge.
In Galbreath an employee working under a suspension was discharged for willful misconduct. This Court held that because the loss in earnings was due not to his disability, but to his willful misconduct, benefits should have been *544 denied. We noted, however, that an employee might be entitled to a resumption of benefits at a later date "upon a proper record made." That record was not evident in Galbreath. Such a record was, however, the subject of Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Cochran, Sr.), 93 Pa.Commonwealth Ct. 175, 500 A.2d 1279 (1985). There, an employee who had sustained a work-related shoulder injury and was working under a suspension resigned in lieu of discharge for reasons of willful misconduct. His resignation was effective July 18, 1980. Several months later he consulted his physician due to increasing pain in his shoulder. He underwent surgery on his shoulder and then filed a reinstatement petition. Medical evidence demonstrated that due to a worsening of his medical condition he could no longer have done the light-duty job he was performing when he resigned. Thus, benefits were properly reinstated in that case.
While we indicated in Jones & Laughlin that we would impose the normal suspension burden (Pieper burden) on a claimant discharged for willful misconduct, that pronouncement was not crucial to the outcome of that case as the claimant actually met the higher burden of demonstrating a worsening of his condition. We now disavow any language in Jones & Laughlin to the extent that it suggests that the suspension burden espoused in Pieper is proper in determining the award of benefits where the claimant is separated from his employment due to his own fault for willful misconduct. It is simply common sense to observe that while benefits may be denied in the first instance where it is through the claimant's own wrongful conduct that separates him from gainful employment, that circumstance should not eternally preclude benefits where the claimant has a worsening medical condition that is directly attributable to his work related injury rather than to any fault of his.
Turning to the facts before us, we note first that the referee did make the crucial finding that the firing was for *545 willful misconduct. But he reasoned that because Claimant continued to be medically disabled, benefits should be reinstated back to the date of Claimant's discharge. This was error. If Claimant had demonstrated a change in his circumstances he might have been entitled to benefits at a later date. Galbreath. However, no such competent medical evidence was produced. As previously noted Claimant presented the medical testimony of Dr. Baldino and based upon that testimony the referee found a recurrence of the injury as of January 17, 1987 (Claimant's last day of work). Dr. Baldino's testimony, however, was incompetent as a matter of law to establish this fact.
At the deposition taken of Dr. Baldino in July of 1988, he testified on direct examination that he examined Claimant on "12/2/86" and that "[t]he patient returned on 1/4/87" at which time Claimant was again examined and treatment was rendered (N.T. 12, 13). On cross-examination, however, Dr. Baldino acknowledged that after the December 2, 1986 visit he did not see Claimant again until 4/1/87, not 1/4/87 (N.T. 19, 20, 27). The statement in the referee's discussion therefore that on January 4, 1987 Dr. Baldino found "moderate to severe paravertebral muscle spasm, with ranges of lumbosacral motion reduced to 50% of normal (N.T. p. 12-13)" is in error. And, that error is egregiously compounded because the referee accepted Dr. Baldino's opinion that Claimant suffered a recurrence of his disability on January 17, 1987. There is, however, absolutely no factual basis whatsoever in the record to support this finding because Dr. Baldino did not even see Claimant from December 2, 1986 until April 1, 1987.
The following is taken from Dr. Baldino's deposition:
Q. So you are not rendering any opinion with respect to what his condition was throughout that period until April; is that correct?
A. I can only say as of the office visit of 12/2/86, he was having  again, he was having discomfort in that area. His spasm was mild. His range of motions were approximately 75 percent of normal.

*546 Q. My question to you was, you were not rendering any opinions with respect to what he could or could not have done through that time until April of '87 when you saw him; is that correct?
A. That is correct.
Q. Are you aware that he was working on a regular basis as a cashier throughout that period?
A. No. I'm not.
Q. Are you also aware that he was dismissed from his occupation for disciplinary reasons while working as 
A. No.
Q. Has he ever told you about his problems with employment throughout the time that he was treating with you.
A. No, he did not.
N.T. 27-28. While it is obvious that Claimant did not present evidence of the worsening of his condition on January 17, 1987, there may be evidence of a worsening of his condition on some subsequent date. Thus, a remand is required. On remand the referee, without taking any additional evidence, shall reconsider the record in accordance with the principles we have set forth in this opinion.
Vacated and remanded.[4]
PALLADINO, J., dissents.

ORDER
NOW, February 14, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned matter *547 is hereby vacated and this case is remanded with instructions that the referee reconsider the evidence in accordance with the legal principles set forth in the opinion.
Jurisdiction relinquished.
NOTES
[1] Referee's Finding of Fact No. 17.
[2] No cross-appeal has been filed by Claimant.
[3] Our scope of review is, of course, limited to determining whether the necessary findings of fact are supported by substantial evidence and whether there has been a constitutional violation or an error of law. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.
[4] Because of our disposition of the case on this issue we need not consider whether Employer's assertion that an unemployment compensation decision which determined that Claimant had been discharged for willful misconduct collaterally estopped the workmen's compensation referee from granting a reinstatement of benefits. We would note, however, that this issue raises the specter of a dishonest Claimant "milking the system" as envisioned by United Parcel Service v. Workmen's Compensation Appeal Board (Portanova), 140 Pa.Commonwealth Ct. 626, 634, 594 A.2d 829, 833 (1991) (Doyle, J. dissenting).