Raymond **NEBROSKIE, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (WRIGHT'S KNITWEAR CORP.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 21, 1994.

Decided Dec. 2, 1994.

Lester Krasno, for petitioner.

Frank L. Tamulonis, Jr., for respondent.

Before COLINS, President Judge, NEWMAN, J., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Raymond Nebroskie (Nebroskie) appeals an order of the Worker's Compensation Appeal Board (Board) which affirmed the decision of the worker's compensation judge (WCJ) that dismissed his petitions for reinstatement of compensation and penalty.

On March 13, 1991, Nebroskie suffered a work-related injury to his right wrist while in the course of his employment as a fabric inspector for Wright's Knitwear Corporation (Employer). A notice of compensation payable was filed and Nebroskie began to receive temporary total disability benefits. On April 15, 1991, Nebroskie returned to "full time modified duty work" but two days later suffered a recurrence of his total temporary disability; as a result thereof, by way of a supplemental agreement dated April 24, 1991, his benefits were suspended for April 15 and 16 and reinstated as of April 17, 1991. Nebroskie later received medical clearance and returned to light duty work with the Employer as a label maker on June 1, 1992.[1] On three separate occasions thereafter,[2] Nebroskie was involved in accidents while at work for the Employer.

On September 11, 1992, Nebroskie reported to work and was told that he was to meet with Robert A. Meyers (Meyers), the Employer's vice-president of corporate services, who informed him that he was being terminated as a result of his being an accident risk. On September 17, 1992, Nebroskie filed petitions for reinstatement of benefits and for penalties. Several hearings were held before the WCJ at which Nebroskie and Colby T. Gaston (Gaston), Employer's safety supervisor, both testified. Also testifying by way of depositions were Meyers, Ellamae Krusnoski (Krusnoski), a supervisor for the Employer, and Pamela Ann Haldeman (Haldeman), a shipper for the Employer.

1. Nebroskie signed a supplemental agreement which provided for weekly wages of $206.00 and a partial disability rate of $11.67 per week; Nebroskie's previous rate of compensation under the terms of the original notice of compensation payable was $218.00 per week.

2. The first incident allegedly occurred on June 12, 1992 when Nebroskie fell off a chair and hit his right hand against a table; the second incident allegedly occurred on August 10, 1992 when Nebroskie slipped on wet stairs and hit his right hand against the wall; and the third incident allegedly occurred on September 9, 1992 when Nebroskie injured his back while bending over to tie his shoe. All of the aforementioned incidents were unwitnessed by others and none of the same required Nebroskie to miss any significant time from work. At no time was it ever alleged that the three incidents resulted in any injury to Nebroskie's wrist.

Krusnoski and Haldeman both testified that Nebroskie had on numerous occasions made statements to them that he would like to get injured again and that he was trying to get injured on the job and extend his compensation. (R.R. 105, 109–115.) Gaston and Meyers both testified that Nebroskie was discharged because of his statements to Krusnoski and Haldeman coupled with the series of accidents. (R.R. 81–82, 131–132.)

In his decision of October 21, 1993, the WCJ made, in pertinent part, the following findings of fact:

12. Based upon the lack of corroboration regarding the alleged incidents which took place after his return to work and his statements made to fellow employees, this Judge finds that the termination of his employment which occurred in September 1992 was proper based upon the Claimant's activities and his own statements.

13. This Judge, having reviewed the testimony of the Claimant, will specifically reject his testimony as not being credible insofar as his testimony conflicts with testimony presented by any of the Defense Witnesses.

14. This Judge will accept as competent, credible, and worthy of belief the statements of the Defense Witnesses as being a basis for Claimant's termination.

(R.R. 12.) The WCJ also made, in pertinent part, the following Conclusions of Law:

2. The Claimant has failed to meet his burden of proof to establish that he is entitled to a Reinstatement of Compensation as of September 11, 1992, as a result of an authorized termination of his employment with the Defendant.

3. The Claimant has failed to meet his burden of proof to establish that the Defendant violated any provisions of the Workmen's Compensation Act by terminating Claimant's compensation on September 10, (sic) 1992.

(R.R. 13.) The WCJ thereafter denied Nebroskie's petitions.

On appeal to the Board, Nebroskie argued that he was discharged without cause and that the WCJ erred, as a matter of law, in failing to reinstate his benefits. The Board concluded that there was substantial, competent evidence to support the WCJ's decision that Nebroskie had been discharged from his employment for just cause, and therefore that Nebroskie was not entitled to a reinstatement of benefits. By order dated April 19, 1994, the Board affirmed the decision and order of the WCJ and dismissed Nebroskie's appeal.

■ On appeal to this Court,[3] Nebroskie argues that, since the testimony allegedly established that his disability continues and that he was discharged from employment without good cause, the WCJ erred, as a matter of law, in failing to reinstate his benefits. In so doing, Nebroskie contends that the only issue in this case is whether or not he was discharged for good cause.[4]

■ We begin by noting that in a worker's compensation case, a claimant seeking reinstatement of benefits must bear the burden of proof. *Anderson v. Workmen's Compensation Appeal Board*, 67 Pa.Commonwealth Ct. 581, 447 A.2d 1081 (1982). Where, as here, the claimant's benefits were suspended rather than terminated, the claimant is not required to prove that he suffered a recurrence of his work related disability since there never was a determination that his disability had, in fact, ceased. *See Pieper v. Ametek—Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990).

Section 413 of the Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772, provides, in pertinent part, as follows:

[W]here compensation has been suspended because the employe's earnings are equal

---

3. Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed and whether all necessary findings are supported by substantial evidence. *Bugay v. Workmen's Compensation Appeal Board (Mellon Bank, N.A.)*, 156 Pa.Commonwealth Ct. 565, 628 A.2d 519 (1993).

4. Nebroskie in effect only challenges the WCJ's decision to dismiss his reinstatement petition, Conclusion of Law No. 2, and in so doing waives any contest to the WCJ's decision regarding the dismissal of his penalty petition, Conclusion of Law No. 3.

to or in excess of his wages prior to the injury ... payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, *unless it be shown that the loss in earnings does not result from the disability due to the injury.* (Emphasis added.)

This provision has been interpreted to mean that where a WCJ finds that a claimant working under a suspension of benefits has been discharged for willful misconduct, worker's compensation benefits are not properly reinstated because the claimant's loss of earnings is not due to his work-related disability, but rather to his own willful misconduct. *Southeastern Pennsylvania Transportation Authority (SEPTA) v. Workmen's Compensation Appeal Board (Pointer),* 145 Pa.Commonwealth Ct. 539, 604 A.2d 315 (1992).

In *SEPTA,* this Court, however, went on to hold that while benefits may be denied where a claimant's own wrongful conduct separates him from gainful employment, that circumstance should not eternally preclude benefits where the claimant has a worsening medical condition that is directly attributable to his work-related injury rather than to any fault of his. Id. at 543, 604 A.2d at 318; *see also Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Cochran),* 93 Pa.Commonwealth Ct. 175, 500 A.2d 1279 (1985). "Thus, a claimant who, although working under a suspension, is discharged for willful misconduct and who seeks to reinstate his benefits must show a change in circumstances, i.e., that his medical condition has worsened and that he cannot do jobs he would have been able to do at the time of his discharge." Id. at 543, 604 A.2d at 318.

■ Turning to the facts before us, the WCJ did make the crucial finding that Nebroskie's discharge was based upon his activities and statements both of which combined to constitute willful misconduct. The WCJ accepted as competent, credible, and worthy of belief the statements of Gaston, Meyers, Krusnoski, and Haldeman to the effect that Nebroskie had stated his intent to become injured and was then involved in a series of accidents. In worker's compensation cases,

the WCJ is the ultimate finder of fact and his assessment of witness credibility is not subject to review on appeal. *See Buczynski v. Workmen's Compensation Appeal Board (Richardson–Vicks, Inc.),* 133 Pa.Commonwealth Ct. 532, 576 A.2d 421 (1990). Accordingly, the WCJ did not err by concluding that Nebroskie was discharged for good cause.

The fact that Nebroskie may have continued to be disabled at the time of his discharge is of no consequence. Whether Nebroskie is entitled to reinstatement of his benefits depends on whether or not he was able to demonstrate, subsequent to his discharge, a change in his circumstances, i.e., that his medical condition has worsened and that he cannot do jobs he would have been able to do at the time of his discharge. While Nebroskie testified that his disability continues, no competent medical evidence was produced that subsequent to his discharge he had experienced a change in circumstances that would warrant the reinstatement of his benefits.

Accordingly, the order of the Board affirming the decision of the WCJ which dismissed Nebroskie's petitions for reinstatement and penalties will be affirmed.

### ORDER

AND NOW, this 2nd day of December, 1994, the order of the Worker's Compensation Appeal Board, dated April 19, 1994, is affirmed.