NABISCO BRANDS, INC. and Travelers Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (ALMARA), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 11, 1997.
Decided Jan. 6, 1998.

James M. Poerio, Pittsburgh, for petitioners.

Daniel K. Bricmont, Pittsburgh, for respondent.

Before DOYLE and PELLEGRINI, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

Nabisco Brands, Inc. (Employer) appeals from a decision of the Workmen's Compensation Appeal Board (Board) affirming the decision of the Worker's Compensation Judge (WCJ), which had granted the reinstatement petition of William Almara (Claimant).

On August 18, 1988, Claimant fell and injured his left elbow while working for Employer as a mixer's helper.[1] Pursuant to a notice of compensation payable dated December 5, 1988, Claimant received total disability benefits in the amount of $366.88 per week. On May 3, 1989, Claimant's physician approved Claimant's return to work as a floor helper[2], and, on May 4, 1989, Employer offered that light-duty position to Claimant. Claimant, however, refused to report to work as a floor helper and, because of his refusal, was fired on May 14, 1989.

On May 18, 1989, Employer filed a suspension petition seeking to suspend or modify Claimant's benefits as of May 5, 1989, because, Employer argued, as of that date, there was work available to the Claimant that was within his physical limitations which he refused. In his answer, Claimant denied the allegations, and hearings were held before a WCJ on November 22, 1989.

During the hearings, the parties presented conflicting evidence regarding the duties of a floor helper. The WCJ found that Employer established that a position as a floor helper was available, that the work was within Claimant's physical limitations,[3] and that Claimant acted in bad faith in refusing to accept the position.

In addition, the WCJ concluded that, when Employer fired Claimant, it violated the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213, and cited *Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Company)*, 118 Pa. Cmwlth. 424, 545 A.2d 465 (1988), *appeal denied*, 522 Pa. 606, 562 A.2d 828 (1989), for the proposition that Claimant's termination entitled him to a reinstatement of total disability benefits. As a result, on April 8, 1991, the WCJ denied Employer's modification petition, modified Claimant's benefits to partial disability for one week, from May 8 to May 14, 1989,[4] after which Claimant would again receive total disability benefits because Employer had unjustifiably fired him.

On appeal, the Board ruled that the WCJ erred by applying *Scobbie* and that this error incorrectly placed the burden on Nabisco to keep the light-duty position open for an indeterminate period of time. The Board ultimately granted Employer's modification petition on December 3, 1992, and, as a result, Claimant received partial disability benefits in the amount of $61.82 from May 8, 1989,

---

1. A mixer's helper assists the mixer by adding ingredients into the mixers and helping the mixer prepare dough.

2. A floor helper is more janitorial in nature, involving mopping, cleaning, and sweeping.

3. The WCJ adopted Employer's version of the floor helper's duties which included lifting a wet mop and a dust mop several times per day, lifting

rubber trays, carrying a bucket of water, dusting, and pulling empty troughs to get supplies. These duties were performed several times each day. (Reproduced Record (R.R.) at 88a.)

4. The WCJ found that the hourly rate for a floor helper paid $11.40 per hour rather than $12.44 as asserted by Employer.

and continuing thereafter.[5] No appeal was taken from the Board's order.[6]

On August 24, 1990, as a result of the worsening of his elbow injury, Claimant underwent surgery, and on January 8, 1993, he filed a petition for reinstatement, alleging that he had become totally disabled as a result of the 1990 surgery. On February 5, 1993, Employer filed a timely answer denying the allegations, and a series of hearings were conducted before the' WCJ beginning on November 5, 1993.

Claimant testified concerning his injury and stated that prolonged use of his left arm causes sharp pains and aches. Claimant further stated that, due to the physical demands of the work in both positions, he could not perform either the job of mixer's helper or the floor helper's job.

During the course of the hearings, Claimant, over the objection of Employer's counsel, introduced evidence concerning the duties of a floor helper. Employer argued that the evidence conflicted with the earlier determination of the WCJ as to the duties of a floor helper. However, the WCJ nonetheless permitted Claimant and Ronald Muto, a person who held the floor helper's position at that time, to testify regarding these duties. Mr. Muto explained that Employer's description of the floor helper's job was incomplete. Although a floor helper did perform the duties indicated by the Employer's job description, Mr. Muto stated that there were additional duties. Specifically, Mr. Muto noted that the present floor helper's position involved the repetitive lifting of heavy objects ranging in weight from 20 to 80 pounds.

In addition, Claimant offered the deposition testimony of Dr. Mark Foster. Dr. Foster indicated that, prior to the August 24, 1990 surgery, Claimant's condition had worsened such that surgery was necessary to relieve the feeling of tightness Claimant ex-perienced. Dr. Foster opined that Claimant could not perform either the pre-injury position of mixer's helper or the modified-light-duty position of floor helper from the date of his surgery until December 7, 1990, the final time that Dr. Foster saw Claimant during 1990. In addition, Dr. Foster considered Claimant's condition to be permanent, and he anticipated that only a small amount of improvement could be expected in the future. In his notes, Dr. Foster suggested that Claimant pursue a different vocation that did not involve the physical demands of the Nabisco positions.

In response, Employer presented the testimony of Doctor Douglas S. Skura, who conducted an independent medical examination of Claimant on August 3, 1993. Based on his examination, Dr. Skura opined that Claimant could perform the floor helper's position. However, Dr. Skura conceded that Claimant could not perform any job that required repetitive use of his injured arm.

Based on the evidence before him, the WCJ concluded that Claimant had met his burden of showing a worsening of his injury. Specifically, the WCJ first found that Claimant's surgery was related to the August 18, 1988 injury and, second, that Claimant's condition had worsened prior to the surgery such that the procedure was necessary. The WCJ also concluded that Claimant could no longer perform either the mixer's helper job or the floor helper's position because they both involved repetitive use of Claimant's arms. In arriving at these conclusions, the WCJ found Dr. Foster's testimony credible and found the portions of Dr. Skura's testimony, in which the doctor concluded that Claimant could perform the modified-duty position, less credible. As a result, the WCJ reinstated Claimant's total disability payments as of August 28, 1990,[7] and the Board

---

5. The Board found that the hourly rate for a floor helper was $12.44 per hour as it was established by a collective bargaining agreement and was not subject to a different interpretation by the WCJ.

6. Although no appeal was taken from the Board's December 3, 1992 order, Claimant did file a petition for reconsideration which the Board denied on March 18, 1993.

7. Although Claimant underwent surgery on August 24, 1990, the WCJ concluded that he experienced a worsening of his condition on August 28, 1990. However, the WCJ provided no further explanation for using August 28, 1990, as the effective date for the reinstatement of Claimant's total disability benefits.

affirmed this decision by an order dated July 23, 1996. This appeal followed.[8]

On appeal, Employer does not dispute that Claimant is entitled to total disability benefits from August 24, 1990, the date of his surgery, to December 7, 1990, 'the period during which Dr. Foster testified that Claimant was totally disabled from performing all work. However, Employer presents two arguments for our consideration. First, Employer argues that the WCJ erred in permitting the testimony concerning the different and more extensive job duties of a floor helper. The admission of such evidence, Employer argues, is barred by collateral estoppel because it conflicts with an earlier determination by the same WCJ. Second, Employer asserts that Claimant was required to prove the duration of his disability and that the WCJ's determination that Claimant was totally disabled after December 7, 1990, is not supported by substantial evidence.

■■■ A general principle of workers' compensation law is that an employer is not required to be a perpetual insurer so that a tailor-made job always exists for a claimant. Therefore, this Court has required a claimant to make a good faith effort to pursue available jobs. *E.g., Johnson v. Workmen's Compensation Appeal Board (McCarter Transit, Inc.),* 168 Pa.Cmwlth. 439, 650 A.2d 1178 (1994). A claimant's failure to make a good faith effort can result in a permanent modification or suspension of benefits. *Johnson.* However, a claimant's bad faith will not always act as a permanent bar to the receipt of benefits. *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Pointer),* 145 Pa.Cmwlth. 539, 604 A.2d 315 (1992). Once a claimant has been found to have acted in bad faith in pursuing a position, in a subsequent reinstatement petition we have required the claimant to establish that he or she could no longer perform the job previously offered and rejected in order to obtain a modification from partial to full disability. *Spinabelli v.*

*Workmen's Compensation Appeal Board (Massey Buick, Inc.),* 149 Pa.Cmwlth. 362, 614 A.2d 779 (1992), *appeal denied,* 533 Pa. 654, 624 A.2d 112 (1993). Therefore, in the present case, Claimant had to establish that he could not perform the floor helper's position as a result of the worsening of his injury; in other words, Claimant had to establish that he was *more* disabled than he had been when he rejected the floor helper's job at the time it was offered to him.

Of course, it is established law that previously-determined issues may not be relitigated in a subsequent decision. *Griswold v. Workmen's Compensation Appeal Board,* 658 A.2d 449 (Pa.Cmwlth.1995), *appeal denied,* 542 Pa. 651, 666 A.2d 1059 (1995). Such an attack is barred by the doctrine of collateral estoppel, and we set forth that test in *Township of McCandless v. McCarthy,* 7 Pa.Cmwlth. 611, 300 A.2d 815 (1973):

> Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel in the second action only as to those matters in issue that (1) are identical; (2) were actually litigated; (3) were essential to the judgment (or decree, as the case may be); and (4) were "material" to the adjudication.

*Township of McCandless,* 300 A.2d at 820–21.

In support of a reversal, Employer first argues that the WCJ erred in admitting and subsequently considering evidence concerning the job duties of the same floor helper's position because this evidence conflicted with his earlier determination of those very same job duties. Specifically, Employer argues that the doctrine of collateral estoppel precluded the introduction of such evidence.

■■■ Considering the evidence presented in both cases and the issues presented to the WCJ for determination, we must conclude that the factors of collateral estoppel were met and that the WCJ should have precluded the testimony regarding the allegedly differ-

**8.** Our standard of review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Joyce v. Workmen's Compensation Appeal Board,* 545 Pa. 135, 680 A.2d 855 (1996).

ent and more extensive job duties of a floor helper. Clearly, both proceedings involved the identical issue of the duties of the floor helper's position and Claimant's ability to perform them. In his April 8, 1991 order denying Employer's modification petition, the WCJ made findings concerning the job duties of the floor helper and concluded that Claimant *could* perform this job. This determination was both material to the previous proceeding and essential to the determination that Claimant could perform that job. Furthermore, *in his petition to reinstate benefits*, Claimant did *not* allege that the duties of the floor helper had changed. Thus, Mr. Muto's testimony at the April 22, 1994 hearing was tantamount to an attempt to relitigate the issues disposed of in the WCJ's first order of April 8, 1991. We conclude, therefore, that the WCJ erred in admitting that testimony.

Notwithstanding the above, however, we believe that the admission of the testimony concerning the floor helper's duties was harmless error and does not alter the outcome of the case. The record indicates that Dr. Foster only considered the job description that Employer submitted during the earlier proceedings. Indeed, Employer concedes that Dr. Foster had no knowledge of Mr. Muto's testimony concerning allegedly new or different job duties. Thus, because Dr. Foster did not rely upon or consider Mr. Muto's version of the floor helper position in offering his opinions concerning Claimant's present ability to perform that position, Employer was not prejudiced by the admission of Mr. Muto's testimony.

In addition, in the records of Claimant's last visit with Dr. Foster, the doctor noted that Claimant should consider vocational training for a job that would not involve the type of work he would perform at Nabisco. The WCJ found Dr. Foster's testimony to be credible and allocated its weight accordingly. Thus, we conclude that Dr. Foster's testimony was by itself sufficient to support the WCJ's finding that Claimant could not presently perform the floor helper's job. In essence, Claimant's condition worsened and his disability increased. Therefore, the Board was correct in affirming the WCJ's decision on this issue, although for somewhat differ-

ent reasons than those relied upon by the Board. Thus, the WCJ's admission of the testimony concerning the floor helper's position was essentially harmless error. *Berry v. Workmen's Compensation Appeal Board (United Minerals and Grain Corporation)*, 144 Pa.Cmwlth.684, 602 A.2d 415 (1992).

Next, Employer argues that Claimant is only entitled to total disability for the closed period of time in which Dr. Foster explicitly indicated that Claimant could perform neither his pre-injury nor the modified-duty job. Specifically, Employer argues that Claimant has the burden of establishing the periods of his disability. In support of this argument, Employer points out that in *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993), and *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 166 Pa.Cmwlth. 141, 646 A.2d 51 (1994), *appeal denied*, 541 Pa. 645, 663 A.2d 696 (1995), both this Court and our Supreme Court indicated that a Claimant has the burden of establishing the duration of disability for compensation purposes.

 Although we agree with these statements, they must be understood in the context of a claim petition rather than a modification or reinstatement petition. The difference between these types of petitions is, of course, significant. In a claim petition, a disability has not yet been legally established, and it is the burden of the claimant not only to establish that he suffered a work-related disability, but also the duration of such disability. *Inglis House.* In the context of a modification petition, however, where it has already been determined that a claimant is presently partially disabled, the claimant is required to establish that he is now *further* disabled, *i.e.*, either further partially disabled or totally disabled, such that he can no longer perform even the light-duty work which he could previously perform.

 In the present case, Dr. Foster's testimony demonstrated, and indeed Employer concedes, that Claimant was disabled from August 24, 1990, to December 7, 1990, and, more important and to the point, Dr. Foster further indicated that he considered Claimant's injury to be permanent and he offered

little hope of any significant change. Thus, Dr. Foster's testimony was sufficient by itself to establish a continuing total disability. Once that is established, that is, that Claimant was totally disabled, then Claimant is entitled to receive total disability benefits unless Employer can then demonstrate that a job is available within Claimant's new medical restrictions. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). Our review of the record indicates that Employer did not offer any evidence of job availability within Claimant's new medical restrictions, and, therefore, we conclude that the WCJ correctly awarded Claimant continuing total disability benefits.

Order affirmed.

### ORDER

NOW, January 6, 1998, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.