# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sears, Roebuck & Company, : 
                 Petitioner : 
                                    : 
          v. : No. 1049 C.D. 2015 
                                      : Submitted: October 16, 2015 
Workers' Compensation Appeal : 
Board (Adams), : 
                 Respondent : 

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**               **FILED: December 17, 2015**

Sears, Roebuck and Company (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a workers' compensation judge's (WCJ) order granting Ken Adams' (Claimant) reinstatement petition. Employer contends the WCJ's decision awarding Claimant total disability benefits is unsupported by substantial evidence and erroneous as a matter of law. Employer also asserts Claimant's medical expert's testimony was equivocal and thus incapable of sustaining Claimant's burden of proof in that it lacked specificity as to the cause of Claimant's disability. In addition, Employer argues the WCJ did not issue a reasoned decision when he relied on Claimant's medical expert's opinion that Claimant could not return to work without mentioning the fact that Claimant's medical expert did not review a surveillance video of Claimant. For the reasons that follow, we affirm.

# I. Background

In October 2011, Claimant sustained a work-related back injury. In November 2011, Employer issued a notice of compensation payable (NCP) describing the injury as lumbar/L5 compression fracture caused by pushing/pulling on a boxed pool table. Pursuant to the NCP, Claimant began receiving $362.22 per week based on an average weekly wage of $402.47.

In February 2012, following an independent medical evaluation (IME), Claimant obtained a medical release to light-duty work. Thereafter, Claimant's benefits were suspended after he returned to work at a modified duty position at wages equal to his pre-injury wage.

On June 28, 2012, Claimant began work at 9:00 a.m., but did not finish the day because Employer sent him home early because of a light volume of work. Claimant then started his vacation on June 29, 2012. When Claimant returned to work on July 8, 2012, his supervisors informed him he would be terminated. The next day, Claimant received a termination letter from Employer. As grounds for termination, Employer asserted that on June 28, Claimant used his cell phone on the floor without permission and hid behind boxes in order to avoid being sent home early.

Claimant did not return to work after his termination. However, Claimant did apply for unemployment compensation, which Employer ultimately did not contest.

In late July 2012, Claimant filed a petition to reinstate compensation benefits alleging Employer terminated him without any reasonable basis. Claimant also filed a petition for penalties alleging Employer violated the provisions of the Workers' Compensation Act[1] (Act), and sought a 50% penalty on all wage loss benefits owed after July 8, 2012. Employer filed a timely answer to both petitions denying Claimant's allegations.

In October 2012, Employer filed a termination petition alleging that as of July 23, 2012, Claimant fully recovered from his work injury. Claimant filed an answer denying Claimant's allegations.

Following the close of the record after three hearings, the WCJ circulated a decision denying Employer's termination petition and granting Claimant's reinstatement petition effective August 14, 2012. In so doing, the WCJ accepted as credible the testimony and opinions of Claimant's medical expert, Dr. Albert D. Janerich (Claimant's Physician), who is board-certified in physical medicine and rehabilitation. Claimant's Physician first examined Claimant on August 14, 2012. Claimant primarily complained of sharp and near constant thoracolumbar pain with radiating features down his legs. WCJ Op., 9/27/13, Finding of Fact (F.F.) No. 9. Claimant's Physician took Claimant's history and reviewed his medical records related to October 2011 work injury. Id. These included an MRI report and X-rays taken after the injury. Id.

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1-1041.4, 2501-2708.

Claimant's Physician also performed a physical examination. He opined Claimant had spasm in the low back area and a reduction of thoracolumbar mobility to 50 degrees. F.F. No. 9. Claimant's Physician further opined, that as a result of the work injury, Claimant suffered a musculo-ligamentous strain of the thoracolumbar spine with spasm, a spinal fracture at L5, and an aggravation of preexisting degenerative joint and degenerative disc disease. Id. Claimant's Physician opined that Claimant's pain is directly related to his October 2011 work injury. Id. Claimant's Physician recommended Claimant perform home exercises; he also prescribed a narcotic analgesic and a transcutaneous nerve stimulator (TENS unit). Id.

Claimant's Physician again examined Claimant in February 2013. F.F. No. 9. Claimant still had muscle spasm and restricted range of motion. Id. Claimant's Physician also reviewed an August 2012 EMG report. Id. The EMG study revealed evidence in keeping with a right L5-S1 and S2 radiculopathy. Id. Claimant's Physician opined the EMG results were consistent with Claimant's historical recount of radiating pain down his legs. Id. In particular, Claimant's Physician opined the EMG study revealed, at the least, an objective cause for the radiating pain down Claimant's right leg. Id. Therefore, based on the EMG, the doctor opined Claimant had a right L4-5 and L5-S1 radiculopathy. Id.

Further, Claimant's Physician testified the October 2011 MRI not only mentioned an L5 fracture, but also two disc herniations at L4-5 and L5-S1. F.F. No. 9. Claimant's Physician opined Claimant's October 2011 work injuries included these two disc herniations. Id.

As a result of his August 14, 2012 examination, Claimant's Physician opined Claimant could not perform any type of gainful employment. F.F. No. 9. Therefore, Claimant's Physician did not release Claimant to return to work. Id.

The WCJ found Claimant's Physician's testimony and opinions regarding Claimant's ongoing disability more credible than those of Employer's medical expert, Dr. Peter A. Feinstein (Employer's Physician). F.F. No. 11a. Employer's Physician, one of Claimant's prior treating physicians, examined Claimant on several occasions beginning in November 2011. F.F. No. 10. Employer's Physician testified he released Claimant to return to work without restrictions as of his July 10, 2012 examination. Id.

However, the WCJ further found, based on the credible testimony of Claimant's former supervisors and coworkers, that Employer terminated Claimant for cause in June 2012. F.F. No. 11b. Therefore, the WCJ denied Claimant's request for benefits from July 8, 2012 through August 13, 2012. Conclusion of Law (C.L.) No. 2.

The WCJ also denied Claimant's penalty petition. To that end, the WCJ determined Employer did not violate the Act. F.F. No. 11(c). In addition, the WCJ determined Employer presented a reasonable contest. F.F. No. 12.

Consequently, the WCJ ordered Employer to pay Claimant ongoing total disability benefits at the rate of $362.22 per week beginning August 14, 2012 in accord with the provisions and limitations in the Act. The WCJ also awarded

5

Claimant litigation costs and ordered Employer to pay all of Claimant's medical expenses related to his work injury. The WCJ also noted Employer is entitled to a credit for any unemployment benefits Claimant received after August 14, 2012.

Employer appealed to the Board. Upon review of Claimant's Physician's testimony, the Board found no error in WCJ's decision reinstating Claimant's benefits. Accordingly, the Board affirmed. Employer petitions for review.[2]

## II. Discussion
### A. Reinstatement of Suspended Benefits

Employer contends a claimant seeking reinstatement of suspended benefits under Section 413(a) of the Act, 77 P.S. §772, must prove, that through no fault of his own, his earning power is once again adversely affected by his disability and that such disability is a continuation of that which arose from his original claim. Bufford v. Workers' Comp. Appeal Bd. (N. Am. Telecom), 2 A.3d 548 (Pa. 2010). Generally, Employer asserts, where a claimant returns to work under a suspension, *without restriction*, to his pre-injury job, stops working and then seeks a reinstatement of benefits, the claimant bears the affirmative burden of demonstrating that it is his work injury that is causing his present loss of earnings. Trevdan Bldg. Supply v. Workers' Comp. Appeal Bd. (Pope), 9 A.3d 1221 (Pa.

---

[2] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger), 38 A.3d 1037 (Pa. Cmwlth. 2011).

Cmwlth. 2010); Folk v. Workers' Comp. Appeal Bd. (Dana Corp.), 802 A.2d 1277 (Pa. Cmwlth. 2002).

Here, Employer argues, Claimant has the burden of proving a causal connection between his alleged ongoing disability and the accepted work injury, a lumbar/L5 compression fracture. Fotta v. Workmen's Comp. Appeal Bd. (U.S. Steel/USX Corp. Maple Creek Mine), 626 A.2d 1144 (Pa. 1993). In other words, in order to obtain a reinstatement, Claimant needed to prove that his work injury, the lumbar L5 compression fracture, is the cause of his loss of earnings. Id.

Employer asserts Claimant's Physician's testimony failed to meet this burden. Essentially, Employer points out that Claimant's Physician diagnosed Claimant's work injury as: a musculo-ligamentous strain of the thoracolumbar spine with spasm; a spinal fracture at L5; an aggravation of preexisting degenerative joint and degenerative disc disease with or without radiculopathy; and, disc herniations at L4-5 and L5-S1. See F.F. No. 9; Dep. of Albert D. Janerich, 2/28/12, at 11-16; R.R. at 41a-46a.

However, Employer asserts, the NCP accepted only the L5 fracture. Because Claimant never filed a review petition or moved before the WCJ to expand the description of the injury, Employer contends Claimant is bound by the NCP's description of injury. Bufford. Therefore, because Claimant's Physician failed to identify which of Claimant's low back conditions caused his inability to work, his testimony does not meet the burden of proving Claimant's disability is related to his work injury. Id.

We disagree. Generally, where a claimant returns to modified-duty work *with restrictions* and is subsequently laid off, he is entitled in a subsequent reinstatement proceeding to a presumption that his disability (loss of earning power) is causally related to the continuing work injury. Klarich v. Workers' Comp. Appeal Bd. (RAC's Ass'n), 819 A.2d 626 (Pa. Cmwlth. 2003) (citing Teledyne McKay v. Workmen's Comp. Appeal Bd. (Osmolinski), 688 A.2d 259 (Pa. Cmwlth. 1997)). Here, however, the WCJ found Employer terminated Claimant for cause effective July 8, 2012. F.F. No. 11b. Therefore, in order to obtain a reinstatement of total disability benefits, Claimant must establish his medical condition worsened and he can no longer perform the modified-duty work he was performing at the time of his discharge for cause. Se. Pa. Transp. Auth. v. Workmen's Comp. Appeal Bd. (Pointer), 604 A.2d 315 (Pa. Cmwlth. 1992).

To that end, the WCJ made the following findings (with emphasis added):

11. After a careful review and consideration of the entire evidence of record, and based upon the above Findings of Fact, this Judge makes the following additional Findings of Fact and credibility determinations:

a. As of August 14, 2012, the Claimant's disability due to his October 17, 2011 work injury recurred, as the Claimant is unable to perform any type of gainful employment. Therefore, the Claimant's temporary total disability benefits shall be reinstated effective August 14, 2012.

In finding as such, this Judge finds as more credible and persuasive the testimony and opinions of [Claimant's Physician] concerning Claimant's inability to perform any type of gainful employment as a result of the work injuries suffered on October 17, 2011. This Judge

8

does not find as credible the opinions of [Employer's Physician] where they conflict with the opinions of [Claimant's Physician]. This Judge finds it significant that [Claimant's Physician] is basing his opinions not only on the physical examination findings, but on his review of the MRI study and the EMG study. This Judge also finds it significant that [Claimant's Physician] found spasm in Claimant's low back area at the time of the August 14, 2012 examination. While this Judge does not find as credible the opinions of [Employer's Physician] concerning Claimant's disability, this Judge does find it significant that [Employer's Physician] found evidence of muscle spasm at the time of Claimant's physical examination on July 10, 2012. This Judge also finds it significant that [Employer's Physician] had no records to indicate that Claimant had a prior problem with his lower back. This Judge also finds as credible Claimant's testimony of his continued problems in the mid and lower back, and legs.

F.F. No. 11a.

In short, the WCJ credited Claimant's Physician's opinion that Claimant's disability related to the October 2011 work injury recurred and prevented Claimant from performing any type of gainful employment. F.F. No. 11a. The WCJ also credited Claimant's testimony with respect to continued problems with his lower back and legs. Id. As such, Claimant met his threshold burden for a reinstatement of total disability benefits. Bufford.

Further, the WCJ rejected Employer's Physician's testimony to the extent it conflicted with that of Claimant's Physician regarding Claimant's ongoing disability. F.F. No. 11a. Therefore, Employer's medical evidence failed to

9

establish that Claimant's loss of earnings resulted from something other than a recurrence of Claimant's October 2011 work injury.

Nevertheless, Employer contends Claimant's Physician's testimony fails to specifically establish that Claimant's spinal fracture at lumbar/L5, the injury accepted in the NCP, caused Claimant's inability to work. Claimant's Physician also diagnosed Claimant's October 2011 work injury as a musculo-ligamentous strain of the thoracolumbar spine with spasm; an aggravation of preexisting degenerative joint and degenerative disc disease with or without radiculopathy; and, disc herniations at L4-5 and L5-S1. F.F. No. 9. Employer argues Claimant's Physician failed to distinguish which of these conditions caused Claimant's inability to return to work. Therefore, Employer urges, Claimant's Physician's testimony failed to establish Claimant's accepted work injury caused his inability to work.

Employer's argument lacks merit. In a reinstatement petition under Section 413(a) of the Act, 77 P.S. §772, where the claimant's benefits were suspended, rather than terminated, the causal connection between the claimant's work injury and his condition is presumed to continue. Bufford (citing Pieper v. Ametek-Thermox, 584 A.2d 301 (Pa. 1990)). Even where a claimant suffers from a combination of work-related and non-work-related causes, the employer remains liable for the claimant's disability as long as the work-related cause is a substantial contributing factor. Martin v. Workers' Comp. Appeal Bd. (Red Rose Transit Auth.), 783 A.2d 384 (Pa. Cmwlth. 2001).

Here, Claimant presented credible medical evidence showing not only that the injury described in the NCP had yet to resolve, but that Claimant's work injury also included a strain of the thoracolumbar spine with spasm, lumbar disc herniations and radiculopathy. Conversely, Employer's medical evidence, deemed not credible as to Claimant's disability, failed to establish that any of Claimant's low back conditions resolved. F.F. No. 11a.

Notably, a WCJ possesses the authority under the express terms of Section 413(a) of the Act, 77 P.S. §771, to amend an NCP at any time, even absent the filing of a review petition. Cinram Mfg., Inc. v. Workers' Compensation Appeal Board (Hill), 975 A.2d 577 (Pa. 2009). As such, the WCJ in the present case had the authority to modify the NCP to include a musculo-ligamentous strain of the thoracolumbar spine with spasm; an aggravation of preexisting degenerative joint and degenerative disc disease with or without radiculopathy; and, disc herniations at L4-5 and L5-S1. However, the WCJ's order, in granting Claimant's reinstatement petition, did not explicitly expand the NCP's description of injury to include these conditions.

Nevertheless, where a WCJ in a termination petition finds non-recovery from a work-related back injury based on a herniated lumbar disc and lumbar radiculopathy, conditions which were not included in the NCP, those conditions become accepted injuries. Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller), 942 A.2d 213 (Pa. Cmwlth. 2008). In Fuller, we cited Gillyard v. Workers' Compensation Appeal Board (Pennsylvania Liquor Control Board), 865 A.2d 991, 996 (Pa. Cmwlth. 2005), where we determined a medical

11

opinion that the claimant recovered from a lumbar strain and sprain, the injury accepted in the NCP, failed to show the claimant fully recovered from a diagnosed work injury of "chronic sciatica at the L5-S1 distribution on the right side with disc bulging at L5-S1 …." "Essentially, we held that by denying a termination petition based on injuries not accepted in the NCP, the WCJ implicitly amended the notice under Section 413 of the Act to include the injuries as part of the NCP." Fuller, 942 A.2d at 218 (emphasis added).

Here, the WCJ found Claimant's Physician more credible than Employer's Physician and determined that Claimant's disability related to his October 2011 work injury recurred. F.F. No. 11a. Further, the WCJ determined Claimant is now unable to perform any type of gainful employment. Id. Thus, Employer failed to meet its burden on rebuttal of showing Claimant's work injury no longer affected Claimant's earning power. Bufford. Therefore, we discern no error or abuse of discretion on the part of the WCJ in granting Claimant's reinstatement petition. Id.

### B. Competent Medical Evidence

Employer also contends the WCJ erred in granting Claimant's reinstatement petition because he failed to present unequivocal medical evidence in support of his requested relief. Employer asserts there were several deficiencies in Claimant's Physician's medical testimony, thereby rendering it equivocal.

Medical evidence is considered unequivocal if the medical expert, after providing a foundation, testifies that in his professional opinion he thinks or

believes the facts exist. Martin. Further, medical evidence must be viewed as a whole, not as isolated expressions. Id. In addition, every utterance from a medical expert need not be positive, certain and absent any reservation. Craftsmen v. Workers' Comp. Appeal Bd. (Krouchick), 809 A.2d 434 (Pa. Cmwlth. 2002). Thus, even if the medical witness admits to uncertainty, reservation, doubt or lack of information with respect to scientific or medical details, his testimony remains unequivocal as long as he does not recant the opinion he first expressed. Cerro Metal Prods. v. Workers' Comp. Appeal Bd. (PLEWA), 855 A.2d 932 (Pa. Cmwlth. 2004).

We also note the WCJ, as fact-finder, is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233 (Pa. Cmwlth. 2013). Furthermore, the WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned. Id. On appeal, neither the Board nor a reviewing court may reweigh a WCJ's credibility determinations. Furnari v. Workers' Comp. Appeal Bd. (Temple Inland), 90 A.3d 53 (Pa. Cmwlth. 2014). In addition, an adverse credibility determination is not a capricious disregard of that testimony. Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works), 862 A.2d 137 (Pa. Cmwlth. 2004).

First, Employer asserts, the WCJ found Claimant not credible regarding the events of June 28, 2012, which led to his termination from his modified-duty position. Specifically, the WCJ rejected Claimant's testimony that he received permission that day to use his cell phone and that he was not hiding

from Employer to avoid being sent home early from work. See F.F. Nos. 4, 11b. Therefore, Employer argues, the WCJ should have considered Claimant's false statements in assessing Claimant's Physician's credibility.

We disagree. Although the WCJ rejected Claimant's testimony regarding the events leading to his termination, the WCJ clearly credited Claimant's testimony regarding "his continued problems in the mid and lower back, and legs." F.F. No. 11a. As noted above, the WCJ may accept the testimony of any witness, either in whole or in part. A & J Builders.

We also view Claimant's Physician's testimony as unequivocal. Claimant's Physician first examined Claimant on August 14, 2012. F.F. No. 9; Dep. of Dr. Albert D. Janerich (Janerich Dep.), 2/28/12, at 7-8; R.R. at 37a-38a. Claimant's Physician took Claimant's history and reviewed his medical records related to the October 2011 work injury. Janerich Dep. at 7-9; R.R. at 37a-39a. These records included Employer's Physician's treatment records, an October 2011 X-ray of Claimant's lower back, and an October 2011 lower back MRI report. Janerich Dep. at 9-10; R.R. at 39a-40a.

Claimant's Physician also performed a physical examination. F.F. No. 9; Janerich Dep. at 10; R.R. at 40a. He opined Claimant had spasm in the low back area and a reduction of thoracolumbar mobility to 50 degrees. Janerich Dep. at 10; R.R. at 40a. Pain, however, precluded an accurate assessment of a complete clinical neurological examination. Janerich Dep. at 10-11; R.R. at 40a-41a.

14

Based on his review of Claimant's history and medical records, and his physical examinations, Claimant's Physician opined, within a reasonable degree of medical certainty, that Claimant's ongoing pain directly related to his October 2011 work injury. Janerich Dep. at 11; R.R. at 41a. Claimant's Physician diagnosed Claimant's work injury as a musculo-ligamentous strain of the thoracolumbar spine with spasm, a spinal fracture at L5, and an aggravation of preexisting degenerative joint and degenerative disc disease with or without radiculopathy. F.F. No. 9; Janerich Dep. at 11; R.R. at 41a.

Claimant's Physician again examined Claimant in February 2013. F.F. No. 9; Janerich Dep. at 12; R.R. at 42a. Claimant's movements remained slow, his range of motion remained restricted, and he did have back spasm. Janerich Dep. at 12; R.R. at 42a.

Claimant's Physician also reviewed an August 2012 EMG report he prepared. F.F. No. 9; Janerich Dep. at 13-14; R.R. at 43a-44a. The EMG study revealed evidence of a right L5-S1 and S2 radiculopathy. Janerich Dep. at 14; R.R. at 43a. Claimant's Physician opined the EMG results were consistent with Claimant's historical recount of radiating pain down his legs. Id. In particular, Claimant's Physician opined the EMG study revealed, at the least, an objective cause for the radiating pain down Claimant's right leg. Id.

Further, based on his review of the October 2011 lower back MRI, Claimant's Physician diagnosed two disc herniations at L4-5 and L5-S1. F.F. No. 9; Janerich Dep. at 15; R.R. at 45a. In particular, Claimant's Physician testified the

15

MRI identified not only the L5 fracture, but also the two disc herniations. Janerich Dep. at 15; R.R. at 45a. Therefore, Claimant's Physician amended his opinion to include the disc herniations at L4-5 and L5-S1 as part of Claimant's October 2011 work injury. F.F. No. 9; Janerich Dep. at 16; R.R. at 46a. Claimant's Physician further clarified that Claimant "does indeed have a right L5-S1 radiculopathy." Janerich Dep. at 16; R.R. at 46a. Claimant's Physician indicated his opinions were made with a reasonable degree medical certainty. Id.

In short, Claimant's Physician observed that Claimant's past medical history was negative. In other words, before Claimant's work injury, he had no problems with his back or legs like those that developed following his October 2011 work incident. Janerich Dep. at 16-17; R.R. at 46a-47a. Consequently, Claimant's Physician opined that Claimant's condition materially and significantly worsened since the termination of his modified-duty position and that he was no longer capable of resuming any sort of gainful employment as of August 14, 2012. F.F. No. 11a; Janerich Dep. at 18-19; R.R. at 48a-49a.

Nonetheless, Employer asserts Claimant provided deceptive histories to both Claimant's Physician and Employer's Physician, which included statements wherein Claimant indicated Employer forced him to exceed his 25-pound lifting restriction by stacking compressors that toppled over on Claimant's last day of work. Employer maintains Claimant misinformed his Physician that he was required to stack pallets, which also violated his lifting restrictions.

16

In addition, Employer argues Claimant's Physician failed to review: Employer's termination documents; the testimony of Employer's supervisors; and, Claimant's own testimony, wherein he admitted Employer's March 2012 surveillance video showed him bending, walking fast, and even running.

Again, we disagree. As discussed above, regardless of the March 2012 surveillance video, the WCJ found Claimant's testimony credible regarding his ongoing problems with his mid and lower back, and his legs. F.F. No. 11a. In short, the inaccuracies in Claimant's testimony related to the circumstances of his termination in July 2012, not to his back and leg condition in August 2012. Moreover, the WCJ's credibility determinations concerning Claimant's testimony fall within his exclusive province as fact-finder and may not be disturbed on appeal. A & J Builders.

Similarly, even assuming Claimant's Physician did not review Employer's supervisors' testimony or documents related to Claimant's termination, the WCJ nonetheless found Employer terminated Claimant in July 2012 for cause and denied Claimant's penalty petition. These findings, however, are irrelevant to the WCJ's determination, based on credible medical evidence, that Claimant's work injury worsened, and rendered him totally disabled as of August 2012. Cerro Metal Prods.; Martin.

Employer further argues Claimant's Physician failed to review Employer's Physician's testimony, which precluded him from considering Employer's Physician's explanations and reasons for his opinions. Thus,

17

Employer contends Claimant's Physician's opinions regarding Claimant's ability to return to work lack a proper foundation and should be deemed equivocal and incompetent as a matter of law.

Employer's argument fails. First and foremost, the WCJ rejected as not credible Employer's Physician's testimony regarding Claimant's disability. F.F. No. 11a. Second, Claimant's Physician indicated throughout his deposition that he reviewed Employer's Physician's treatment notes and diagnoses.

In sum, Claimant's Physician's medical testimony, viewed as a whole and in a light most favorable to Claimant as the prevailing party, is unequivocal. Cerro Prods.; Martin. Therefore Claimant's Physician's testimony provides competent evidence supporting the WCJ's determination that Claimant's total disability related to his October 2011 work injury recurred as of the date of Claimant's Physician's August 14, 2012 examination. Id.

### C. Reasoned Decision

Employer further contends the WCJ failed to comply with the reasoned decision requirement in Section 422(a) of the Act[3] because he relied on Claimant's Physician's opinion that Claimant could not return to work without discussing the March 2012 surveillance video of Claimant performing various

---

[3] Section 422(a) of the Act requires a WCJ to issue a "reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions …." 77 P.S. §834. "A decision is 'reasoned' if it allows for adequate review by the appellate courts under the applicable review standards." Pryor v. Workers' Comp. Appeal Bd. (Colin Serv. Sys.), 923 A.2d 1197, 1202 (Pa. Cmwlth. 2006).

18

tasks, such as walking, bending and running, without difficulty. To that end, Employer points out Claimant's Physician admitted he did not review the surveillance video. Nevertheless, the WCJ found Claimant's Physician's opinion credible.

Initially, we note, the mere fact that a medical expert does not have certain records before him does not render his expert testimony incompetent. Saville v. Workers' Comp. Appeal Bd. (Pathmark Stores, Inc.), 756 A.2d 1214 (Pa. Cmwlth. 2000). Rather, this circumstance goes to the question of the weight to be accorded such testimony. Id. This is an issue wholly entrusted to the WCJ as fact-finder. Id.

More importantly, surveillance films alone may be an inadequate basis to meet the evidentiary burden of showing a reduction in a claimant's disability. Thompson v. Workmen's Comp. Appeal Bd. (Bethlehem Steel Corp., Freight Div.), 683 A.2d 1315 (Pa. Cmwlth. 1996) (citing Hartzell v. Workmen's Comp. Appeal Bd. (Bowen McLaughlin), 515 A.2d 1009 (Pa. Cmwlth. 1986)).

Here, the surveillance video was taken in March 2012, several months before Claimant's Physician's August 2012 examination. At that time, Claimant still performed modified-duty work for Employer. Neither the WCJ nor Claimant's Physician found Claimant disabled in March 2012. Moreover, the surveillance video, absent any corroborative credible medical evidence, cannot establish a reduction in disability. Thompson; Hartzell.

As discussed above, Claimant's Physician's expert medical testimony, viewed as a whole, is unequivocal and provides competent evidence supporting the WCJ's determination. Given the limited evidentiary value of the March 2012 surveillance video, we discern no error or abuse of discretion on the part of the WCJ in failing to discuss the surveillance video in his decision. Saville.

Further, our review of the WCJ's decision indicates it fully complies with the reasoned decision requirement in Section 422(a) of the Act. Section 422(a) requires some explanation of credibility determinations regarding conflicting deposition testimony; a WCJ must articulate an objective basis for his credibility determinations. Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.), 828 A.2d 1043 (Pa. 2003); Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.), 893 A.2d 191 (Pa. Cmwlth. 2006). Thus, a summary of testimony, by itself, would not satisfy the reasoned decision requirement. Id. However, there are countless objective factors which may support a WCJ's credibility determinations. Daniels; Dorsey. The reasoned decision requirement does not require the WCJ to discuss all evidence presented. Dorsey. Rather, the WCJ must make the findings necessary to resolve the issues presented by the evidence and that are relevant to the decision. Id.

Here, in Findings of Fact Nos. 1-10, the WCJ summarized the testimony of the witnesses in a comprehensive manner. In particular, in Findings of Fact Nos. 9-10 the WCJ summarized in detail the medical evidence presented.

20

In Finding of Fact No. 11a, the WCJ explained why he accepted the testimony of Claimant's Physician as more credible than that of Employer's Physician. Claimant's Physician based his opinions not only on the physical examination findings, but also on his review of the October 2011 MRI and the August 2012 EMG. F.F. No. 11a. The WCJ also found it significant that Claimant's Physician found spasm in Claimant's back at the time of his August 2012 examination. Id. To that end, the WCJ observed that although he did not find Employer Physician's testimony credible regarding Claimant's disability, Employer's Physician also found evidence of spasm at the time of his July 2012 examination. Id. Finally, the WCJ found it significant that Employer's Physician had no records indicating Claimant experienced any problems with his back prior to the work injury. Id. Having provided an objective basis for his credibility determinations, the WCJ's decision satisfies the reasoned decision requirement in Section 422(a) of the Act. Daniels; Dorsey.

## III. Conclusion

For the above reasons, we observe no error in the Board's decision upholding the WCJ's grant of Claimant's reinstatement petition and award of temporary total disability benefits effective August 14, 2012. Accordingly, we affirm.

ROBERT SIMPSON, Judge

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sears, Roebuck & Company,                    :
                              Petitioner     :
                                             :
          v.                                 :     No. 1049 C.D. 2015
                                             :
Workers' Compensation Appeal                 :
Board (Adams),                               :
                              Respondent     :

## **O R D E R**

**AND NOW**, this 17th day of December, 2015, for the reasons stated in the foregoing opinion, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge