**Frank FRANCISCO, Petitioner,**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (PATTERSON–KELLEY CO.), Respondent.**

**PATTERSON-KELLEY COMPANY, Petitioner,**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (FRANCISCO), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 24, 1997.

Decided Feb. 5, 1998.

Ronald J. Mishkin, Stroudsburg, for Petitioner.

James A. Stapleton, Reading, for Respondent.

Before DOYLE and McGINLEY, JJ., and LORD, Senior Judge.

DOYLE, Judge.

Before this Court are the cross-appeals of Frank Francisco (Claimant) and the Patterson–Kelley Company (Employer) from the order of the Workers' Compensation Appeal Board (Board) dated March 27, 1997. Claimant appeals that part of the Board's order which affirmed the order of the Workers' Compensation Judge (WCJ) which had denied Claimant's reinstatement petition, and Employer appeals the Board's reversal of the WCJ's order which had granted Employer a credit against Claimant's workers' compensation benefits for unemployment compensation benefits received by Claimant from January 4, 1995, through April 24, 1995.

The underlying facts are as follows. On November 25, 1991, Claimant injured his left knee while in the course and scope of his employment as a welder, and, pursuant to a notice of compensation payable, he began receiving compensation benefits. On June 1, 1992, Claimant returned to work, and, in conjunction with his return, his benefits were suspended pursuant to a supplemental agreement.

On January 4, 1995, Claimant was laid off, and on March 27, 1995, he filed a petition to reinstate his benefits, alleging that as of January 4, 1995, he was working at a *modified* job when he was laid off by Employer. Employer filed a timely answer denying the allegations, and hearings were scheduled be-fore a WCJ. Claimant returned to work on April 24, 1995, but, during the period of his layoff, Claimant received unemployment compensation benefits in the amount of $329.00 per week.

At a hearing before the WCJ on June 8, 1995, Claimant testified concerning his injury. Specifically, Claimant stated that, when he returned to work following his injury, his doctor had placed medical restrictions on his job duties, and, although he had the same job title and the same weekly wage when he came back to work, he was unable to perform his time-of-injury duties. In response, Employer presented no evidence whatsoever.

The WCJ found that "regardless of the Claimant's work related injury, he would have been subjected to a general economic layoff on January 4, 1995" (Finding of Fact (F.F.) No. 7; WCJ decision at 2; Reproduced Record (R.R.) at 34a) and concluded, therefore, that "Claimant's earning power was not effected [sic] by his disability from his work-related injury." (F.F. No. 8; WCJ decision at 2; R.R. at 34a.) In addition, the WCJ concluded that Employer was entitled to a credit for the unemployment compensation benefits that Claimant received from January 4, 1995, to April 24, 1995, against any workers' compensation benefits which may be awarded to Claimant even though he had not received any such benefits. The Board, citing our Supreme Court's decision in *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 540 Pa. 482, 658 A.2d 766 (1995), affirmed the WCJ's decision denying Claimant benefits, because the Board also concluded that his disability was caused solely by economic factors and not by Claimant's work-related injury. But, the Board reversed the WCJ's decision granting Employer a credit for Claimant's unemployment compensation benefits, concluding that "we cannot see, from the record, why Defendant should be entitled to a credit from Claimant's Workers' Compensation benefits when none where paid during that period." (Opinion of the Board at 4; R.R. at 43a.)

On appeal to this Court,[1] Claimant argues that he returned to work *with restrictions*

---

1. Our standard of review is limited to determin-ing whether necessary findings of fact were sup-

and should, therefore, be entitled to a reinstatement of his benefits, because his current disability is due to his work-related injury. Claimant also asserts that Employer is not entitled to any credit for unemployment compensation benefits. In its cross appeal, Employer first argues that Claimant is not entitled to a reinstatement of benefits and, in the alternative, *if* Claimant does receive a reinstatement of benefits, Employer is entitled to a credit against such benefits for unemployment compensation benefits that Claimant received from January 4, 1995, to April 24, 1995.

We first will address the issue of Claimant's entitlement to a reinstatement of his benefits, because, if Claimant is not entitled to workers' compensation benefits, we need not reach the issue of Employer's credit against such benefits.

■ It is, of course, well settled that a suspension of benefits is warranted under the Workers' Compensation Act[2] (Act) when a claimant experiences a residual physical impairment but the claimant's wages are equal to or greater than the amount earned in his pre-injury position. *Diffenderfer v. Workmen's Compensation Appeal Board (Rabestos Manhatten, Inc.)*, 651 A.2d 1178 (Pa. Cmwlth.1994), *petition for allowance of appeal denied*, 540 Pa. 642, 659 A.2d 561 (1995). Although an employer is still responsible for the consequences of a work-related injury, no benefits are paid to the claimant because the claimant's earning power is not affected by the injury and, a claimant seeking to have his benefits reinstated following a suspension bears the burden of proving that: (1) through no fault of his own, his earning power has again been affected by the work-related injury; and (2) the disability that gave rise to the original claim continues. *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990).

In *Harle*, both this Court[3] and our Supreme Court examined the effect of a layoff on the suspension/reinstatement analysis. The *Harle* case involved a claimant who received benefits as a result of an injury he sustained while he was employed as a pressman. The claimant's physician initially released the claimant to a light-duty position, but later released the claimant to return to work with no restrictions, despite the fact that the claimant complained of lingering pain in his thumb. Harle was laid off by his employer, but obtained a similar position as a pressman that paid slightly less per hour than his previous job. The WCJ granted the employer's termination petition, and the Board affirmed. On appeal, this Court reversed the decision of the Board. However, the Supreme Court reversed our decision and in doing so concluded that a suspension of benefits is proper, and no benefits are payable, when a claimant's disability is attributable to factors other than his work-related injury. Our Supreme Court concluded that Harle's loss of earning power was not due to his injury at work because he was again working as a pressman.

■ Subsequent to the *Harle* decision, however, this Court had occasion to further refine the allocation of the burden of proof where a claimant petitions to reinstate his benefits following a suspension and a layoff. This refinement further perpetuated the legal distinction between a disability resulting solely from economic factors, such as a layoff, and a continuing disability attributable to a work-related injury. In *Teledyne McKay v. Workmen's Compensation Appeal Board (Osmolinski)*, 688 A.2d 259 (Pa.Cmwlth. 1997), the claimant had been receiving workers' compensation benefits until he returned to work. Subsequent to his return, however, he was laid off, and he then petitioned for a reinstatement of his benefits. In granting benefits, we applied the following analysis:

Where a claimant returns to work under a suspension, **with restrictions**, that is, does not return to his or her time-of-injury job, but rather to a modified position, and

---

ported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)* 684 A.2d 673 (Pa.Cmwlth.1996).

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4

3. 155 Pa.Cmwlth. 556, 625 A.2d 751 (1993), *rev'd in part*, 540 Pa. 482, 658 A.2d 766 (1995).

is subsequently **laid off** and petitions for the *reinstatement* of benefits, the claimant is also entitled to the presumption that his or her disability, *i.e.*, loss of earning power, is causally related to the continuing work injury. . . .

Conversely, where a claimant returns to work under a suspension, **without restriction**, to his or her pre-injury job, is subsequently laid off, and then petitions for reinstatement, the claimant has the burden to affirmatively establish that it is the work-related injury which is **causing** his or her present loss of earnings. That is, while the claimant still enjoys the presumption that some work-related medical injury continues, the claimant is not entitled to the presumption that his or her present *disability*, *i.e.*, loss of earnings, is causally related to that work injury. . . .

*Id.* at 262 (citations omitted) (footnote omitted) (emphasis in original). Once a claimant establishes the causal connection between the loss of earnings and the original injury, either by presumption or by affirmative proof, the claimant will receive a reinstatement of benefits unless the employer provides available work within the claimant's restrictions, demonstrates that such work is available, **or** demonstrates that the claimant's disability is caused by something other than the work-related injury. *Id.; see also Trumbull v. Workmen's Compensation Appeal Board (Helen Mining Co.)*, 683 A.2d 342 (Pa. Cmwlth.1996).

In the present case, although Claimant testified concerning the restrictions that his doctor had placed on his return to work,[4] the WCJ did not make a specific finding as to whether such restrictions were factual and valid. Succinctly, he failed to determine the critical factor of whether the Claimant came back to work with or without restrictions. Such a determination is essential because it establishes whether a Claimant can perform his time-of-injury job without significant medical impairment. Therefore, we are obligated to remand the case to the Board for the limited purpose of determining whether or not Claimant returned to work "with restrictions," that is, to determine if the Claimant can perform his time of injury job with-

4. On cross-examination, Claimant testified as follows:

Q: When you returned to work in either June or July of 1992 following your injury in October of '91, you have indicated you returned to your welder job. Is that correct?

A: Yes, sir.

Q: When you returned to that job, was there any discussion between you and either the Personnel Department or PK's nurse about any limitations that you would have or restrictions that you would have in doing that particular job?

A: They said that I was to adhere to the restrictions set forth by Dr. Primiano.

Q: And did he have a return-to-work evaluation that had restrictions on it?

A: Yes, sir; he did.

Q: What was your understanding of the limits that you were to have when you returned to work in June of '92?

A: My limitations were as follows. There was no bending, no kneeling, no squatting, no prolonged standing, no climbing, no lifting over 50 pounds, and I could take a break as necessitated if my knee started bothering me.

Q: During this period of time that you continued to work from July of—or June of '92 through the time of the economic layoff, were you under the care of Dr. Primiano?

A: Yes, sir; I was, and still am.

Q: Okay. Following the layoff in January of '95, did you see doctor, Dr. Primiano?

A:· Yes, sir; I did.

Q: Were you also examined by a company-selected doctor, Dr. Goodbout—or Dr. Godbout?

A: Yes, sir; I was.

Q: Now that you have returned to work as of April 24 of '95, do you continue with any restrictions, or are you working without any restrictions or limitations?

A: I am working under the same restrictions imposed by Dr. Primiano.

Q: The welder job at Patterson Kelley that you did before your injuries, were there ever jobs that required climbing or stooping?

A: Yes, sir. There was a lot of climbing involved, working off ladders. You would climb the vessel to copper line or weld couplings, nozzles, et cetera, do set-up work.

Q: You don't do that type of thing now?

A: No, sir.

Q: The problem that you have primarily relates to what portion of your body?

A: My left knee, sir.

Q: Is that the knee that was operated on by Dr. Primiano?

A: Yes, sir. It was an anterior cruciate repair, with a bone graft, and two screws implanted. (Notes of Testimony (N.T.), 6/8/95, at 19–21; R.R. at 19a–21a.) When the subject of the need for medical testimony was brought up before the WCJ, the Judge questioned the purpose of such testimony, and, because of the implications that such medical testimony was not needed, Claimant did not submit any.

out significant disabling impairment.[5] If Claimant did return to work with such restrictions, Claimant was entitled to the presumption that his loss of earning power was causally related to his injury. Furthermore, because Employer presented no evidence to rebut this presumption, such as evidence of available jobs within Claimant's restrictions, if Claimant returned to work with restrictions, he is entitled to receive workers' compensation benefits.

Next, we address the issue of Employer's entitlement to a credit for Claimant's unemployment compensation benefits. In 1993, our General Assembly amended[6] Section 204(a) of the Act to provide, in relevant part, as follows:

> [I]f the employee receives unemployment compensation benefits, such amount or amounts so received shall be credited as against the amount of the award made under the provisions of sections 108 and 306. . . .

77 P.S. § 71(a). In *Healy v. Workmen's Compensation Appeal Board (Industrial Ceramics)*, 675 A.2d 1315 (Pa.Cmwlth.1996), this Court concluded that an employer is entitled to a credit against a claimant's workers' compensation benefits under amended Section 204 of the Act when the event that triggers that right occurs, *i.e.*, when the claimant qualifies for unemployment compensation benefits; provided, however, that the claimant qualifies for and receives the benefits after August 31, 1993, the effective date of Act 44.

In the present case, Claimant became eligible for unemployment benefits during the period of his layoff, January 4, 1995, to April 24, 1995. Obviously, this was well after the effective date of Act 44. Thus, if, on remand, the Board determines that Claimant is eligible for workers' compensation benefits, the Employer is entitled to a credit against such benefits for the unemployment compensation benefits which Claimant received during his layoff. If, of course, the Board determines that Claimant is not entitled to benefits at all, then the issue of whether Employer is entitled to a credit is moot.[7]

Vacated and remanded.

## ORDER

**NOW**, February 5, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby vacated, and the matter is remanded to the Board for a determination of whether or not Claimant returned to work with restrictions. If the Board concludes that Claimant did return to work with restrictions, the Board is then instructed to calculate and award Claimant benefits accordingly, taking into account the

---

5. The following hypothetical illustrates the underlying facts which gives credence to this principle: an employee who is injured while working as a welder is provided with a janitorial job which employer purposely subsidizes with wages equal to or greater than the employee's pre-injury wage. Accordingly, a suspension of benefits is entered. The employer then lays off the employee under the guise of economic conditions, or "downsizing," a term now commonly used in the marketplace. Except for the principle, the employer could avoid paying compensation benefits on the ground that the claimant's loss of earnings would be caused solely by economic factors rather than by the employee's inability to perform his job due to his disability. Thus, an employer could effectively "sandbag" the compensation system. In *Smith v. Workmen's Compensation Appeal Board*, 80 Pa. Cmwlth. 508, 471 A.2d 1304 (1984), Judge John MacPhail identified this particular situation as one that "has a unique potential for abuse" by an employer. *Id.* 471 A.2d at 1306–07 n. 4.

However, as Judge MacPhail further noted, an employer is not condemned to forever be the insurer of a job for a partially disabled employee, because an employee who is capable of performing his time-of-injury duties without significant medical impairment or disability will not be entitled to receive compensation benefits, but rather must seek other employment himself if there is a layoff. Thus, the determination of whether or not a claimant returns to work with or without restrictions prevents the employer from abusing the system, while, at the same time, encourages an employee who is able to perform his time-of-injury job duties to look for work he can perform rather than collect compensation benefits at employer's expense.

6. Act of July 2, 1993, P.L. 190, *as amended*, 77 P.S. § 71 (commonly referred to as "Act 44").

7. On remand, the Board may, in its discretion, order that additional evidence be taken in order to make the required determination. Of course, if additional evidence is permitted, both parties would have the opportunity to offer such evidence.

credit to which Employer is entitled for unemployment compensation benefits received by Claimant.

Jurisdiction relinquished.