George JORDAN, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (PHILADELPHIA NEWSPAPERS, INC.), Respondent.

Philadelphia Newspapers, Inc., and St. Paul Travelers, Petitioners

v.

Workers' Compensation Appeal Board (Jordan), Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 22, 2006.

Decided March 28, 2007.

Reargument Denied May 17, 2007.

---

**30**

Alfred J. Carlson, Philadelphia, for designated petitioner, George Jordan.

Thomas C. Lowry, Philadelphia, for respondents.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

George Jordan (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) which affirmed as modified the order of the Workers' Compensation Judge (WCJ) which granted in part Claimant's petition for benefits and ordered Philadelphia Newspapers, Inc. (Employer) to pay Claimant disability benefits from May 22, 2003, to July 11, 2003, and from September 26, 2003, to July 18, 2004. The WCJ awarded Employer a credit for compensation paid under a temporary notice of compensation payable and for wages paid under Employer's salary continuation program. The WCJ suspended Claimant's benefits as of July 19, 2004. Further, the WCJ granted Claimant's penalty petition in the amount of fifty percent of the Claimant's wage loss benefits, ordered Employer to pay all litigation costs, and to pay an unreasonable contest fee in the amount of $3,000.00. Employer cross-petitions for review.

Claimant worked for Employer as a production supervisor. On May 14, 2003, Claimant sustained an injury to his head, neck, and low back. On June 13, 2003, Employer issued a temporary notice of compensation payable which described the injury as post concussion syndrome and cervical and lumbar sprains. On July 17, 2003, Employer notified Claimant that the temporary compensation payable would cease as of July 11, 2003. On the same date, Employer issued a notice of workers' compensation denial which stated: "6. Other good cause.... There was compensable lost time from 05/22/03 until return to

work 07/11/03." Notice of Workers' Compensation Denial (Denial) at 1; Reproduced Record (R.R.) at 46a.

On December 11, 2003, Claimant petitioned for benefits and alleged that he suffered "closed head injury, cervical spine injury, low back injury, headaches" when he was "struck in the back of the head by a bundle of newspapers while in the course and scope of his employment." Claim Petition, December 11, 2003, at 1; R.R. at 1a.

Claimant also petitioned for penalties and asserted that Employer violated the Workers' Compensation Act (Act) [1] when it failed to issue a notice of compensation payable within twenty-one days of Claimant's disability. Claimant further alleged:

Claimant's injuries were initially accepted through the issuance of a Temporary Notice of Compensation Payable and then Claimant's workers' compensation benefits were stopped through the issuance of the Notice Stopping Compensation Payable and Notice of Denial. Through the denial, the employer admitted that the Claimant had a compensable loss time injury from May 22, 2003 until July 11, 2003. Despite recognizing the Claimant [sic] compensable work injury, the employer/insurer did not then issue a Notice of Compensation Payable and neither a Notification of Suspension upon the Claimant's return to work nor a Supplemental Agreement. Claimant is once again been [sic] disabled from his work injuries since on or about September 24, 2003, he has not received workers' compensation benefits. Claimant requests assessment of unreasonable contest attorney's fees pursuant to Section 440 of the Act. Claimant requests assessment of penalties at the rate of fifty percent (50%) on all past due compensation payable.

Penalty Petition, December 11, 2003, at 2; R.R. at 7a.

Before the WCJ, Claimant testified that after the injury he put ice on his neck, finished his shift, and worked the next day. Soon after, while he was at home, he experienced dizzy spells. Claimant also testified that he had pain and stiffness in his neck and upper back. Notes of Testimony, April 22, 2004, (N.T.) at 13–14; R.R. at 60a–61a. Claimant continued to have weakness in his neck, headaches, and his "neck feels like it's not strong enough to hold my head up." N.T. at 15; R.R. at 62a. When Claimant was initially out of work from May 22, 2003, until July 11, 2003, he received his regular salary. N.T. at 15; R.R. at 62a. He returned to work on July 12, 2003, and worked until September 26, 2003. He used three or four weeks of vacation, so he worked for a week and then was off for a week. He stopped working because "it was getting worse . . . . [t]he headaches and the weakness in my neck and the weight of my head." N.T. at 17–18; R.R. at 64a–65a. Claimant received salary continuation. N.T. at 24; R.R. at 71a. When he attempted to return to work in July 2004, he became sick and nauseous and had headaches and suffered from drug withdrawal syndrome. Notes of Testimony, September 30, 2004, (N.T. 9/30/04) at 58, 66; R.R. at 476a, 484a. Claimant was hospitalized from July 26, 2004, to July 31, 2004, due to headaches and neck pain. N.T. 9/30/04 at 61; R.R. at 479a. Claimant reiterated that he could not return to work due to his headaches and neck pain. N.T. 9/30/04 at 62–63; R.R. at 480a–481a.

Claimant presented the deposition testimony of Steven J. Valentino, D.O. (Dr. Valentino), board-certified in orthopedic surgery as well as in impairment and dis-

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626.

ability ratings and Claimant's treating physician since December 15, 2003. Dr. Valentino initially diagnosed Claimant with a cervical facet strain with aggravation of previously quiescent cervical degenerative disc disease, and post concussion syndrome. Deposition of Steven J. Valentino, July 13, 2004, (Dr. Valentino Deposition) at 16; R.R. at 120a. Dr. Valentino testified within a reasonable degree of medical certainty that Claimant's condition was "causally and solely connected to the work injury of 5/14/03." Dr. Valentino Deposition at 16–17; R.R. at 120a–121a. Dr. Valentino concluded that Claimant was not capable of returning to his "prior level of gainful employment." Dr. Valentino Deposition at 17; R.R. at 121a. Dr. Valentino also examined Claimant on January 26, 2004. His diagnosis of Claimant did not change. Dr. Valentino Deposition at 18–19; R.R. at 122a–123a. Dr. Valentino also treated Claimant on May 25, 2004, and June 17, 2004. At the time of the June 17, 2004, examination, his diagnosis did not change. Dr. Valentino Deposition at 25–26; R.R. at 129a–130a. After this examination, Dr. Valentino diagnosed Claimant with cervical facet syndrome with aggravation of degenerative disc disease and stenosis with post concussion syndrome, radiculitis, and soft tissue injuries to the neck and shoulders which were directly caused by the May 14, 2003, work injury. Dr. Valentino Deposition at 27; R.R. at 131a. Dr. Valentino opined within a reasonable degree of medical certainty that Claimant could work a part-time sedentary job of four hours a day and that his return to work would be contingent on further clinical examinations and reevaluations. Dr. Valentino Deposition at 31; R.R. at 135a. Claimant was not fully recovered from the work injury and he could not return to his full time pre injury job. Dr. Valentino Deposition at 32; R.R. at 136a. On cross-examination, Dr. Valentino explained that he would release Claimant to work for four hours a day and then reevaluate in a few weeks. Dr. Valentino Deposition at 51; R.R. at 155a.

Employer presented the deposition testimony of Steven Mandel, M.D. (Dr. Mandel), board-certified in neurology, electro-diagnostic medicine, independent medical examination, quality assurance, and utilization review. Dr. Mandel initially examined Claimant on February 4, 2004, took a history, and reviewed medical records. Based on his examination he believed Claimant could return to his time of injury job as of the date of the examination. Deposition of Steven Mandel, M.D., July 19, 2004, (Dr. Mandel Deposition) at 17–18; R.R. at 315a–316a. Dr. Mandel also saw Claimant on June 9, 2004, and determined that he had no definable medical impairment. Dr. Mandel Deposition at 22; R.R. at 320a. Dr. Mandel testified within a reasonable degree of medical certainty that Claimant could return to work for four hours a day for two weeks in a sedentary capacity, not to lift more than ten pounds, and lifting, pulling and pushing, walking, and standing to be modified as necessary. Dr. Mandel Deposition at 26–27; R.R. at 324a–325a.[2]

---

**2.** Employer presented the deposition testimony of Francis Burke, III, M.D. (Dr. Burke), board-certified in emergency medicine and a specialist in occupational medicine. Dr. Burke examined Claimant on May 19, 2003, and took a history. Dr. Burke diagnosed claimant with a head contusion with a post concussion syndrome and cervical sprain/strain. Deposition of Francis Burke, III, M.D., July 21, 2004, (Dr. Burke Deposition) at 22; R.R. at 251a. X-rays revealed that Claimant also had multilevel degenerative disc disease at C4–C5, C5–C6, C6–C7 which Dr. Burke believed was unrelated to the work injury. Dr. Burke examined Claimant on July 11, 2003, and testified within a reasonable degree of medical certainty that Claimant was fully recovered from his work-related injury

By deposition Dr. Valentino further testified that Claimant was capable of returning to work on a part-time basis. Jonah Corbett (Corbett), Employer's safety and workers' compensation manager, contacted Claimant by letter dated July 15, 2004, after Dr. Valentino's deposition, and asked him to return to work in a "basically sedentary" job with no lifting of more than ten pounds. Claimant would audit some Daily News trips and direct a mail room employee or a circulation employee to count bundles on the loading dock at the Schuylkill printing plant to ensure that the bundle contained the right number of papers. Notes of Testimony, September 30, 2004, (N.T. 9/30/04) at 21–22; R.R. at 439a–440a. Claimant returned to work on July 19, 2004. According to Corbett, Claimant worked two and one-half hours at most of his four hour shift because he felt sick, his neck bothered him, and he was nauseous. N.T. 9/30/04 at 24; R.R. at 442a. Claimant reported that smoke or fumes from the trucks nauseated him. N.T. 9/30/04 at 25; R.R. at 443a. The next time he was scheduled to work, he worked for twenty minutes before he went to the nurse's office to lie down. Claimant returned to the loading dock at 2:50 a.m. after the truck he was supposed to audit had left. He left work before the end of his scheduled four hour shift. N.T. 9/30/04 at 26–27; R.R. at 444a–445a. He worked four hours on July 23, 2004, then an hour and one-half on July 26, 2004. On July 27, 2004, Corbett received a message from the mail room supervisor that Claimant was in the hospital. N.T. 9/30/04 at 28; R.R. at 446a.

The WCJ granted Claimant's claim petition in part. The WCJ awarded Claimant total disability benefits at the rate of $675.00 per week, plus interest, from May 22, 2003, to July 11, 2003, and from September 26, 2003, to July 18, 2004. The WCJ granted Employer a credit for compensation paid under the temporary notice of compensation payable and for wages paid under the salary continuation program. The WCJ suspended benefits as of July 19, 2004.

The WCJ granted Claimant's penalty petition and ordered Employer to pay Claimant a penalty in the amount of fifty percent of Claimant's wage loss benefits without deduction for credit. The WCJ ordered Employer to pay an unreasonable contest fee in the amount of $3,000 as well as all litigation costs. The WCJ found Claimant credible and rejected Dr. Burke's testimony.

The WCJ made the following relevant findings of fact:

12. Regarding Claimant's condition from September 26, 2003 to February 3, 2003[sic], I find the testimony of Dr. Valentino to be credible to the extent that it supports a finding that Claimant was not fully recovered from his work injury in the nature of cervical facet syndrome with aggravation of degenerative disc disease, post concussion syndrome and soft tissue injuries to the neck and shoulders. I further find Dr. Valentino's testimony to be credible to the extent that it supports a finding that Claimant continued to be disabled from his pre-injury job during this period. Dr. Valentino's testimony is supported by his clinical examination and is consistent with Claimant's credible testimony regarding his continuing symptoms during this period.

13. Regarding Claimant's condition on and after February 4, 2003[sic], I find the testimony of Dr. Mandel more persuasive than the testimony of Dr. Valentino. Dr. Mandel's testimony is per-

as of that date. Dr. Burke Deposition at 33; R.R. at 262a.

suasive given that he was Claimant's treating physician and performed an examination which reported normal results. Dr. Mandel's examination was also contemporaneous with Claimant's activities depicted on videotape, and Dr. Mandel credibly testified that videotaped activities supported his finding that Claimant was not physically impaired. Although Claimant's testimony that he continued to have symptoms during this period is credible, his testimony that these symptoms disable him from his pre-injury job is not credible, given the activities depicted in the videotape.

14. Based upon the testimony of Dr. Mandel I find that Claimant was able to return to work without restriction as of February 4, 2004. To the extent that the testimony of Dr. Valentino, or of the Claimant, conflicted with this finding, such testimony is rejected.

15. I have carefully reviewed the testimony of Jonah Corbett and find it to be credible and worthy of belief. Mr. Corbett's testimony regarding the job offer is corroborated by written documentation and confirmed by Claimant's testimony. Mr. Corbett's testimony regarding job duties and the condition of the work place is credible given his position and expertise on these issues. Based upon the testimony of Mr. Corbett I find that Claimant was notified of the availability of work, four hours a day, to increase to full time work within four weeks. I find that claimant was offered additional accommodations, if necessary. I further find that Claimant did return to work on July 19, 2004, but worked only two and one-half hours before leaving complaining of nausea. I find that Employer's worksite had procedures in place to prevent truck exhaust from be-

ing present in claimant's work area. To the extent that the testimony of the Claimant conflicts with these findings, such testimony is rejected.

. . . .

18. Counsel submitted an Attorney Time Record which accounts for his time expended in this matter and an Affidavit of Legal Experience. The Attorney Time Record indicates 34.1 hours at a professional rate of $250.00 per hour, for a total fee of $8,525.00.

WCJ's Decision, February 10, 2005, Findings of Fact Nos. 12–15, 18 at 9–10; R.R. at 19a–20a.

Claimant appealed to the Board and contended that the WCJ erred when he suspended Claimant's benefits because the job offered to Claimant was not within his restrictions, there was no Notice of Ability to Return to Work issued relative to the opinion of Dr. Mandel, and the job offered was not within the restrictions set forth by Dr. Valentino. Claimant also contended that the WCJ erred when he suspended, rather than modified, Claimant's benefits because Claimant was only part time and Claimant's regular salary was to be prorated for the actual work time performed. Claimant also asserted that his benefits should have been reinstated as of July 26, 2004, the date he was hospitalized, or, in the alternative, on August 5, 2004, the date he was taken off work until further notice.[3] Claimant also contended that the WCJ erred when he awarded $3,000 in reasonable contest fees as opposed to $8,525.00.

Employer cross-appealed and contended that the WCJ accepted as credible Dr. Mandel's testimony that Claimant was not disabled and was capable of returning to his pre-injury job as of February 4, 2004, which warranted a suspension as of that

3. Dr. Valentino issued a note to that effect.

date, rather than July 19, 2004. Employer also argued that because Dr. Mandel attributed Claimant's symptoms to his degenerative disc disease rather than the work injury, benefits should have been terminated rather than suspended. Employer asserted that the WCJ erred when he assessed counsel fees in the amount of $3,000.00 and a fifty percent penalty on wage loss benefits without deduction or credit for benefits paid under a temporary notice of compensation payable and salary continuation with no wage loss. Employer argued that the penalty was disproportionate to the economic harm, that a penalty could not be awarded for a period of time in which there was no wage loss, and a reasonable contest existed which nullified any penalty.

With respect to Employer's appeal, the Board concluded the WCJ did not err when he suspended benefits effective July 18, 2004, rather than February 4, 2004, because no job was offered to Claimant at that time. The Board also determined that the WCJ did not err when he decided not to terminate benefits because Dr. Mandel did not opine that Claimant fully recovered. With respect to Employer's contention that the WCJ erred when he found a violation of the Act and assessed an excessive penalty of fifty percent, the Board agreed in part:

> In the instant case, Defendant [Employer] issued a Denial indicating that it was denying the claim for 'Other good cause' and that 'there was no compensable lost time from 5/22/03 until return to work 07/11/03'. . . . However, claimant did lose time from work as a result of the injury for that period and Defendant [Employer] should have issued a NCP [notice of compensation payable] and then suspended benefits through a Notification of Suspension or Supplemental Agreement. Therefore, Defendant's [Employ-

> er] issuance of a Denial was in violation of the Act and a penalty was warranted.
> . . . .
> Since Defendant's [Employer] violation did not cause unreasonable or excessive delay, a penalty in the amount of fifty percent was not warranted. Accordingly, we will modify the Decision to award a penalty in the amount of twenty percent in accordance with the language of the statute. (Citations omitted). (Footnote omitted).

Board Opinion, January 30, 2006, (Opinion) at 7–8; R.R. at 38a–39a.

With respect to Claimant's appeal, the Board decided:

> Claimant . . . argues that the Judge erred in suspending benefits effective July 18, 2004 as the job offered was not within the restrictions set by Dr. Valentino. The Judge accepted Dr. Valentino's testimony as to Claimant's condition from September 26, 2003 through February 3, 2004. However, he accepted Dr. Mandel's opinion as to Claimant's condition after February 4, 2004. Dr. Mandel indicated that Claimant would be able to perform the offered job as of July 19, 2004. Thus, there was no error. However, as Claimant also argues, Dr. Mandel approved the job as of July 19, 2004 indicating that he believed that Claimant could return to work at four hours a day for the first two weeks and full time after that. Therefore, the Judge should have modified benefits beginning July 19, 2004 based on Claimant's ability to work four hours a day for the first two weeks and then suspended benefits thereafter. We will modify the decision to reflect this.

> Claimant next argues that the Judge should have reinstated Claimant's benefits effective July 26, 2004, the date he was hospitalized due to work injuries, or in the alternative, reinstated benefits as

of August 5, 2004, the date he provided a note from his treating physician (Dr. Valentino) removing him from work. We do not agree. As indicated, the Judge accepted Dr. Mandel's testimony regarding Claimant's condition after February 4, 2004. . . . (Footnote Omitted).

Opinion at 8; R.R. at 39a.

Claimant contends that the Board erred when it affirmed the WCJ's decision to suspend rather than to modify Claimant's benefits as of July 19, 2004, that the Board erred when it affirmed the WCJ's decision not to reinstate benefits as of July 26, 2004, when Claimant again became totally disabled due to his work injuries, that the Board erred when it reduced the award of penalties, and that the Board erred when it affirmed the WCJ's decision to award less than the full amount of attorney's fees.

■ Employer counters that the Board erred when it did not suspend benefits as of February 4, 2004, based upon the credible testimony of Dr. Mandel and the WCJ's finding that Employer met its burden to establish that Claimant was able to return to his pre-injury job without restrictions as of February 4, 2004, that the Board erred when it failed to reverse the award of penalties and/or reduce the penalty award by permitting the penalties to be assessed on wage loss benefits subject to no credit for wages paid under a salary continuation plan, and that the Board erred when it failed to reverse the award of counsel fees since a reasonable basis for contest existed and the WCJ found that

the temporary notice of compensation payable was proper.[4]

## I. Benefits.

■ Initially, Claimant contends that the Board erred when it affirmed the WCJ's decision to suspend rather than modify Claimant's benefits as of July 19, 2004, because the job offer was for part time, not full time, work. Claimant asserts that Corbett made the offer after hearing the deposition testimony of Dr. Valentino which indicated that Claimant could return to work on a part time basis. Corbett's letter outlined a four hour work day for two weeks, six hours per day in the third week, and eight hours the fourth week. Claimant asserts that the Board erred when it affirmed the WCJ's suspension of benefits because Dr. Valentino never opined that Claimant could return to full time work but only part time. Therefore, Claimant asserts that his benefits should have been modified rather than suspended.

■ To sustain an award of benefits, a claimant has the burden to establish that he suffered a work-related injury and that this injury resulted in disability.[5] *Ruhl v. Workmen's Compensation Appeal Board (Mac–It Parts, Inc.)*, 148 Pa.Cmwlth.294, 611 A.2d 327 (1992). During the pendency of the claim petition, the claimant must demonstrate that the injury continues to cause disability. A WCJ has the authority to award compensation for a work-related injury and then terminate benefits as of the date the disability ceased if Claimant has not carried his burden of proving that

---

4. This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

5. For workers' compensation purposes, disability is equated with a loss of earning power. *Inglis House v. Workers' Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993).

disability has continued. *Ohm v. Workers' Compensation Appeal Board (Caloric Corporation)*, 663 A.2d 883 (Pa.Cmwlth.1995).

In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)* 516 Pa. 240, 532 A.2d 374 (1987), our Pennsylvania Supreme Court adopted the following requirements which an employer must meet to satisfy its burden to modify compensation payments:

1. The employer must produce medical evidence of a change in the employee's condition.

2. The employer must produce evidence of a referral or referrals to a then open job (or jobs), which fits the occupational category which the claimant has been given medical clearance e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed on the job referral(s).

4. If the referral fails to result in a job then the claimant's benefits should continue.

*Kachinski*, 516 Pa. at 252, 532 A.2d at 380.

■ Here, it is undisputed that Claimant established that he suffered a work-related injury. Employer's medical witness, Dr. Mandel, opined that as of February 4, 2004, Claimant could return to work. Employer did not offer Claimant a position until July 19, 2004. Employer produced medical evidence to indicate a change in condition and evidence of a referral to a job which Claimant accepted at least initially. Though Claimant argues that the WCJ erred because Dr. Valentino only released him to part time work, Claimant ignores the fact that the WCJ accepted Dr. Mandel's testimony. The

WCJ has exclusive province over questions of credibility and evidentiary weight and is free to accept or reject the testimony. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa.Cmwlth.461, 593 A.2d 921, *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991). This Court will not disturb a WCJ's finding when it is supported by substantial evidence. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262 (Pa. Cmwlth.1995). Further, the Board did modify the WCJ's order such that Claimant's benefits were modified for the first two weeks he was scheduled to work because he was only scheduled for part time work. The Board did not err.[6]

■ Claimant next contends that the Board erred when it affirmed the WCJ's failure to reinstate Claimant's temporary total disability benefits as of July 26, 2004, when Claimant once again became disabled.

■ When attempting to obtain a reinstatement of benefits, the claimant bears the burden of proving that, through no fault of his own, his earning power has again been affected by a work-related injury and that the disability that gave rise to the original injury continues. *Francisco v. Workers' Compensation Appeal Board (Patterson–Kelley Co.)*, 707 A.2d 584 (Pa. Cmwlth.1998). Where it has already been determined that a claimant is partially disabled, the claimant must establish that he is now further partially disabled or totally disabled, such that he can no longer perform the work he previously could perform. *Nabisco Brands, Inc. v. Workers'*

---

**6.** Claimant argues that Employer failed to issue Claimant a Notice of Ability to Return to Work form as required by Section 306(b)(3) of the Act, 77 P.S. § 512(3), when Dr. Mandel released him to return to work. However,

Employer did send Claimant a Notice of Ability to Return to Work after Dr. Valentino stated in his deposition that Claimant could return to part time duty. This Court finds no error.

*Compensation Appeal Board (Almara),* 706 A.2d 877 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* 558 pa. 613, 558 Pa. 613, 736 A.2d 606 (1999). When a claimant seeks to modify his benefits from partial disability to total disability, the claimant has the burden to establish that his physical condition has changed such that reinstatement of total benefits is warranted. Claimant must demonstrate through substantial competent evidence that such a change in his physical condition recurred. *Reed v. Workmen's Compensation Appeal Board (McClure Company),* 157 Pa.Cmwlth.677, 630 A.2d 961 (1993), *petition for allowance of appeal denied,* 539 Pa. 684, 652 A.2d 1328 (1994).

Here, pursuant to the Board's order, Claimant retroactively received partial disability benefits when he was hospitalized after he returned to work in a part time capacity. While Claimant argues that his benefits were suspended at this time, the Board's order which modified the WCJ's order meant that Claimant was receiving partial disability benefits when he returned to work. Therefore, he had the burden to prove that he was entitled to full disability benefits. Claimant did not provide any credible evidence that his work-related injury recurred. Employer submitted the hospital records which indicated that Claimant was admitted to the hospital with tension headaches with a secondary diagnosis of drug withdrawal syndrome. Dr. Valentino submitted a note, after the hospitalization, which removed him from work, but the WCJ did not find Dr. Valentino credible.

Employer contends that Claimant's benefits should have been suspended as of February 4, 2004, when Dr. Mandel credibly opined that Claimant could return to work because Claimant had the burden of proving a continuing disability during the pendency of the claim petition. This Court agrees with the Board that the WCJ did not err when he decided not to suspend benefits until Claimant returned to work pursuant to *Kachinski.* Claimant did not receive an offer to return to work until July 19, 2004.

## II. Penalties.

Claimant next contends that the WCJ properly awarded a fifty percent penalty and that the Board erred when it reduced the penalty to twenty percent. Employer, on the other hand, contends that the Board erred when it failed to reverse the award of penalties and/or reduce the penalty award by permitting the penalties to be assessed on wage loss benefits subject to credit for wages paid under a salary continuation plan.

Claimant petitioned for penalties and alleged that Employer violated the Act when it failed to issue a notice of compensation payable within twenty-one days of Claimant's injury especially when Employer admitted in the notice of compensation denial that Claimant suffered a work-related injury.

The WCJ discussed the penalty petition: In response to Claimant's request for penalties, Employer correctly notes that case law has permitted the use of a Temporary Notice of Compensation Payable in situations where the employer is uncertain of the duration of a claimant's disability.... In the present case, however, the violation is not in Employer's use of the Temporary Notice of Compensation Payable, but in its use of the Notice of Compensation Denial. The Notice of Compensation Denial does not deny a work-related disability, but rather confirms such stating: 'There was compensable lost time from 05/22/03 until return to work 07/11/03.' Once Employer admits a work-related disability, it is obligated to file a Notice of

Compensation Payable and to pay indemnity and medical benefits until such time as benefits are altered under a Notice of Suspension, Final Receipt, or Judge's Order. Employer's failure to follow the procedures set forth in the Workers' Compensation Act has resulted in a unilateral cessation of benefits, and has caused Claimant to pursue a Claim Petition, rather than defend against a Termination/Suspension Petition. (Citation omitted).

WCJ's Decision, at 10. The WCJ assessed a penalty in the amount of fifty percent of Claimant's wage loss benefits awarded in the decision, without deduction for credit.

Employer appealed the imposition of penalties to the Board and argued that at the very least the penalty was excessive. The Board agreed with the WCJ that Claimant violated the Act because it violated Section 406.1(c) of the Act, 77 P.S. § 717.1(c)[7] and the Bureau of Workers' Compensation regulation, 34 Pa.Code § 121.13.[8] Employer issued a denial and asserted that there was no compensable lost time from May 22, 2003, until Claimant returned to work on July 11, 2003. The Board agreed with the WCJ that Employer violated the Act because Employer

should have issued a notice of compensation payable and then suspended benefits when Claimant lost time from work due to injury. However, because Employer's violation did not cause an unreasonable or excessive delay under Section 435 of the Act, 77 P.S. § 991(d),[9] the Board reduced the penalty to twenty percent.

Employer asserts that the WCJ erred when he reasoned that Employer's failure to file a notice of compensation payable forced Claimant to pursue a claim petition and deprived him of continuing payments of indemnity and medical benefits which warranted the imposition of a penalty without credit. Employer asserts that Claimant did not experience a wage loss until July 4, 2004, because of salary continuation. Employer asserts that a penalty is not warranted here because Employer did not violate the Act or any regulation.

For support, Employer cites *Gereyes v. Workers' Compensation Appeal Board*, 793 A.2d 1017 (Pa.Cmwlth.2002), *petition for allowance of appeal denied*, 572 Pa. 768, 819 A.2d 549 (2003). In *Gereyes*, Belay Gereyes (Gereyes) received workers' compensation benefits pursuant to a temporary notice of compensation payable in connection with tendonitis in both wrists.

---

7. Section 406.1(c) of the Act, 77 P.S. § 717.1(c), provides, "If the insurer controverts the right to compensation it shall promptly notify the employe or his dependent, on a form prescribed by the department, stating the ground upon which the right to compensation is controverted and shall forthwith furnish a copy or copies to the department."

8. The regulation provides:

If compensation is controverted, Notice of Workmen's Compensation Denial, Form LIBC–496, shall be sent to employe or dependent fully stating the grounds upon which the right to compensation is controverted, with a copy to the Department, no later than 21 days after notice or knowledge to the employer of employee's disability or death.

9. Section 435 of the Act, 77 P.S. § 991(d)(i), provides:

The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violation of the provisions of this act or such rules and regulations or rules of procedure:

. . . .

(i) Employers and insurers may be penalized a sum not exceeding twenty per centum of the amount awarded and interest accrued and payable: Provided however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable. . . .

The temporary notice of compensation payable was dated May 4, 1999, but payments commenced as of April 11, 1999. Gereyes returned to work with a wage loss sometime thereafter. On June 28, 1999, New Knight, Inc. (New Knight), Gereyes's employer, issued its last compensation check under the notice. On June 29, 1999, New Knight issued a notice stopping temporary compensation payable and a notice of compensation denial. In the denial notice, New Knight stated that Gereyes was not disabled as a result of an injury within the meaning of the Act. Gereyes petitioned for penalties and alleged that New Knight violated the Act by illegally reducing and then suspending the payment of benefits. The WCJ granted the penalty petition on the basis that Employer issued the notice to stop temporary compensation more than five days after Gereyes's payments had been reduced and approximately one month after Gereyes stopped working. The WCJ assessed a twenty percent penalty on all compensation payable to Gereyes after May 18, 1999. Gereyes and New Knight both appealed to the Board which reversed. The Board concluded that the WCJ's relevant findings were not supported by substantial evidence and the WCJ misconstrued Section 406.1 of the Act, 77 P.S. § 717.1. *Gereyes*, 793 A.2d at 1018–1019.

On appeal to this Court, Gereyes contended that New Knight unlawfully reduced his compensation in violation of the temporary notice of compensation procedures in Section 406.1 of the Act, 77 P.S. § 717.1, that as a matter of law the notice of temporary compensation payable converted to a notice of compensation payable, and that New Knight improperly issued a compensation denial after it had effectively admitted liability when it proposed that he sign a supplementary agreement and voluntarily paid his partial disability benefits. *Gereyes*, 793 A.2d at 1019. This Court

determined that a penalty was appropriate for the reduction of Gereyes's benefits. However, with respect to whether New Knight improperly issued the notice of compensation denial, this Court determined:

> The record establishes the undisputed facts that the Employer [New Knight] paid Gereyes temporary compensation pursuant to a notice of temporary compensation payable from April 11, 1999 until June 29, 1999. The Employer [New Knight] then decided to controvert the claim, and on June 29, 1999, it sent Gereyes a notice stopping temporary compensation within five days after the last payment and within the ninety-day period during which temporary compensation was payable in conformance with the requirements of subsection (d)(5) and (6) as quoted above. Also on June 29, 1999, the Employer [New Knight] sent Gereyes a notice of compensation denial, stating the grounds upon which the claim was controverted in conformance with subsection (5) as quoted above. Because the Employer [New Knight] complied with the requirements of subsection (d)(5) and (6), the judge's conclusions that the Employer [New Knight] failed to properly issue its notice of stopping temporary compensation and notice of compensation denial are in error. In stopping temporary compensation and denying liability, the Employer [New Knight] complied with the statute, and the notice of temporary compensation payable was not converted to a notice of compensation payable.

*Gereyes*, 793 A.2d at 1020–1021.

 Employer argues that *Gereyes* supports its contention that it acted properly and that the Act does not delineate a proper right or wrong reason for revoking

a temporary notice of compensation payable.

Claimant, on the other hand, asserts that Employer violated Section 406.1 of the Act, 77 P.S. § 717.1, when it issued the denial when it knew for a fact that it was liable for a work-related injury. Claimant argues that there was no doubt that a work injury occurred on May 14, 2003, and that Employer was liable. Claimant asserts that under the facts of this case a notice of compensation payable must have been issued.

This Court agrees with the Board that Employer violated the Act. Employer's reason for issuing the notice of compensation denial was that there was no compensable lost time from May 22, 2003, until Claimant's return to work on July 11, 2003. There was no compensable lost time because Claimant received salary continuation from May 22, 2003, through July 11, 2003. However, Claimant's receipt of salary continuation does not alter the fact that he did suffer a work-related injury even if he suffered no disability during this period. This Court has determined that Section 406.1 of the Act, 77 P.S. § 717.1, applies not only to disabled employees, who have suffered loss of earning power due to a work-related injury, but also to injured employees. *See Brutico v. Workers' Compensation Appeal Board (U.S. Airways, Inc.)*, 866 A.2d 1152 (Pa.Cmwlth. 2004), *petition for allowance of appeal denied*, 584 Pa. 679, 880 A.2d 1240 (2005). Further, this case differs from *Gereyes* in that here an injury was accepted and the only reason that the injury did not result in disability was Claimant's use of his salary continuation benefits.

Further, with respect to the assessment of penalties, Claimant contends that the Board erred when it reduced the amount of the penalty to twenty percent from fifty percent. Claimant asserts that he suffered an unreasonable delay because Claimant's May 14, 2003, work injury was not recognized until the WCJ's decision of February 10, 2005.

When a violation of the Act occurs, it is within the discretion of the WCJ to impose penalties. The assessment of penalties as well as the amount of the penalties imposed is discretionary. Absent an abuse of discretion by the WCJ, this Court will not overturn a WCJ's assessment of penalties. *Brutico.* "An abuse of discretion is not merely an error of judgment but occurs, . . ., when the law is misapplied in reaching a conclusion." *Westinghouse Electric Corporation v. Workers' Compensation Appeal Board (Weaver)*, 823 A.2d 209, 213–214 (Pa. Cmwlth.2003), *petition for allowance of appeal denied*, 581 Pa. 694, 864 A.2d 531 (2004).

Here, Employer's failure to issue a notice of compensation payable, as opposed to a notice of compensation denial, resulted in a significant delay before Claimant's work-related injury was recognized. As a result, Claimant was forced to file a claim petition, rather than defend against a termination or suspension petition. This Court determines that the WCJ did not abuse his discretion when he imposed the fifty percent penalty. The Board erred when it reduced the penalty to twenty percent.[10]

---

**10.** Employer asserts that because Claimant suffered no wage loss during the period in question, it should not be penalized. However, the WCJ determined that Employer was liable to pay Claimant workers' compensation benefits subject to a credit for any compensation paid under the temporary notice of compensation payable and under Employer's salary continuation program. The cases cited by Employer in support of its contention that it was not subject to a penalty because there was no award of benefits are distinguishable

### III. Reasonable Contest.

█ Claimant next contends that the Board erred when it affirmed the WCJ's decision to award counsel fees which were less than the full value of Claimant's counsel's services rendered to litigate the petitions.[11]

Section 440(a) of the Act, 77 P.S. § 996(a)[12], provides:

In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe .... in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, that cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

█ An employer's contest is reasonable if the contest was brought to resolve a genuinely disputed issue, not merely to harass the claimant. *Dworek v. Workmen's Compensation Appeal Board (Ragnar Benson, Inc.)*, 166 Pa.Cmwlth.

512, 646 A.2d 713 (1994). The imposition of attorney fees is a question of law reviewable by the Board and this Court. *McGoldrick v. Workmen's Compensation Appeal Board (Acme Markets, Inc.)*, 142 Pa.Cmwlth.558, 597 A.2d 1254 (1991). Furthermore, there is not a per se rule that an employer's contest is unreasonable as a matter of law because a violation of the Act has been proven. *Bates v. Workers' Compensation Appeal Board (Titan Construction Staffing, LLC)*, 878 A.2d 160 (Pa.Cmwlth.2005), *petition for allowance of appeal denied*, 588 Pa. 752, 902 A.2d 1243 (2006). Instead, "each case must be decided on its own facts in order to determine whether an employer's contest of a petition asserting a violation of the Act is reasonable." *Id.*

Claimant's counsel submitted a quantum meruit bill which itemized the work done on Claimant's case and the time spent on it. The bill came to 34.1 total hours at a rate of $250.00 per hour for a total of $8,525.00. The WCJ awarded reasonable contest fees of $3,000.00. The WCJ determined that Employer's contest of the claim petition was reasonable because Employer had medical evidence which disputed Claimant's disability during the periods alleged in the claim petition but that the contest of the penalty petition was not reasonable. The quantum meruit bill did not distinguish between work performed in relation to the claim petition and in relation to the penalty petition. Apparently,

---

from the present controversy. In *Jaskiewicz v. Workmen's Compensation Appeal Board (James D. Morrisey, Inc.)*, 651 A.2d 623 (Pa. Cmwlth.1994), *petition for allowance of appeal denied*, 541 Pa. 628, 661 A.2d 875 (1995), the WCJ terminated benefits so James Jaskiewicz did not receive an award. In *Wyche v. Workers' Compensation Appeal Board (Pimco)*, 706 A.2d 1297 (Pa.Cmwlth.1998), Dwayne Wyche's petition for benefits was denied. Here, in contrast, Claimant did receive an award of benefits subject to a credit.

11. Employer asserts that because it did not violate the Act its contest was reasonable. As this Court has already determined that Employer violated the Act, this argument has no merit.

12. This Section was added by the Act of February 8, 1972, P.L. 25.

the WCJ determined that $3,000.00 of the bill pertained to the penalty petition. Claimant raised the issue before the Board that the WCJ should have awarded the full amount of the quantum meruit bill. The Board did not address this issue.

Claimant argues that Employer failed to introduce any fact witnesses to dispute the occurrence of the work injury and in fact the notice of compensation denial stated that an injury occurred. Claimant was forced to establish a compensable injury. Claimant correctly argues that Employer had no medical evidence that Claimant never suffered a work-related injury.

In *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164 (Pa.Cmwlth.2003), this Court addressed whether the failure to issue a notice of compensation payable when an employer was aware of a work injury meant that a contest was unreasonable. Shauna Morrison (Morrison) worked at an amusement park and injured her hand and received stitches when she rescued a child who was stuck on a ride. Waldameer Park, Inc. (Waldameer) was aware of the injury because one of the owners took Morrison to the hospital where she received seventeen stitches. Morrison had continued problems with her arm and hand. Waldameer did not issue a notice of compensation payable. Morrison petitioned for benefits. The WCJ granted the petition and determined that Waldameer's contest was unreasonable because Waldameer had notice of the injury and its medical witness did not testify that the injury did not occur. The Board affirmed. *Waldameer*, 819 A.2d at 166–168.

This Court affirmed. With respect to the issue of reasonable contest this Court determined:

> We believe it is reasonable to conclude that if Employer [Waldameer] would have followed the Act by issuing a notice

of compensation payable acknowledging that Claimant [Morrison] did in fact suffer a right hand injury, it is quite possible that Claimant [Morrison] never would have needed to hire an attorney and incur attorney's fees, as her right to any future medical benefits would have been secure. . . . It is evident that Employer's [Waldameer] failure to follow the procedures set forth in the Act is the reason that Claimant [Morrison] was forced to hire and [sic] attorney and incur attorney's fees. For this reason, Employer's contest was unreasonable and it should be liable for payment of Claimant's [Morrison] attorney's fees.

*Waldameer*, 819 A.2d at 171.

Although *Waldameer* is not directly on point, it is similar to the present case in that a notice of compensation payable was not filed. This required additional litigation on the part of the Claimant. This Court determines that the WCJ erred when he determined that Employer's contest was reasonable with respect to the claim petition. As a result, Employer shall pay all of Claimant's attorney's fees of $8,525.00.

Accordingly, this Court affirms in part and reverses in part. This Court affirms as to the modification and suspension of benefits. This Court reverses on the issue of the award of penalties and attorney's fees.

### ORDER

AND NOW, this 28th day of March, 2007, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed in part and reversed in part. This Court affirms with respect to the modification and suspension of benefits. This Court reverses the Workers' Compensation Appeal Board order with respect to penalties and reinstates the or-

der of the Workers' Compensation Judge with respect to a penalty of fifty percent of the wage loss benefits of George Jordan without deduction for credit. This Court reverses the Workers' Compensation Appeal Board order with respect to attorney's fees and orders Philadelphia Newspapers, Inc. to pay the attorney's fees of George Jordan in the amount of $8,525.00.